2113

The STATE, Respondent v. Larry CHINA, Appellant.

(440 S.E. (2d) 382)

Court of Appeals

*Assistant Appellate Defender Tara Dawn Shurling,* of *SC Office of Appellate Defense,* and *Douglas Strickler,* Columbia, for appellant.

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Norman Mark Rapoport,* Columbia, and *Sol. Wade S. Kolb, Jr.,* Sumter, *for respondent.*

Heard Oct. 5, 1993. Decided Dec. 26, 1993.

Reh. Den. Mar. 3, 1994.

HOWELL, Chief Judge:

Larry China appeals from his conviction for first-degree burglary and first-degree criminal sexual conduct, asserting several trial errors as grounds for reversal. We affirm.

The victim, a 29-year-old woman, was alone at the residence of her boyfriend, Walter Moore, and his sister, Patricia Blair. She heard a car horn, went to the front door, and saw a man (later identified as Larry China) in a cream-colored car. China, who knew the sister of the victim's boyfriend, Patricia, began yelling something that the victim could not understand.

The victim returned inside the house and heard China pull the car into the driveway. She went to the door to see what he wanted. China told the victim he had a package for Patricia, entered the house without permission, turned on the lights, and locked the door. China then pushed the victim onto a couch and sexually battered her. Several weeks later the victim identified China in a lineup.

## I. *Evidence of Prior Bad Acts*

China contends the trial court erred in permitting the state on two separate occasions to cross-examine him as to certain prior bad acts. In addition, assuming that

his character was placed in evidence, China argues the scope of the questions exceeded those permissible under the exceptions for character testimony in the rules of evidence. We disagree.

China, testifying on his own behalf, denied any sexual misconduct with the victim. He admitted, however, having been at the residence where the alleged assault took place on prior occasions during an affair with Patricia. The affair lasted for one year and allegedly ended three or four months prior to this incident.

China testified that his wife was aware of his affair with Patricia. He further testified that he and his wife had not separated as a result of the affair. On cross-examination the state asked China if his wife had separated from him because of the affair or "because she called in a complaint to the police department for [China] assaulting her." China responded that it was "neither."

During direct examination China testified that he was unemployed as a result of the pending charges. On cross-examination the state reviewed China's direct testimony as to China's employment status and then asked the following questions.

Q. And didn't you work for a little time at Cover Manufacturing?

A. Yes, I did.

Q. And weren't you discharged because you grabbed this young woman here by the breast?

Outside of the presence of the jury the defense moved for a mistrial. The trial judge denied the motion and ruled the state would be permitted to continue for the sole purpose of impeachment. The trial judge gave the jury thorough instructions regarding the purpose and permissible consideration that should be given to impeachment testimony.

Following these instructions the cross-examination continued and China denied that he had been discharged for the alleged misconduct. At that point the state ceased any further questions in regard to prior misconduct.[1]

---

[1] On redirect examination the defense clarified that China's last place of employment was actually Glasscock Trucking and not Cover Manufacturing.

It is well settled that when an accused takes the witness stand he becomes subject to impeachment like any other witness. *State v. Outlaw*, 307 S.C. 177, 414 S.E. (2d) 147 (1992); *State v. Major*, 301 S.C. 181, 391 S.E. (2d) 235 (1990); *State v. Davis*, — S.C. —, 419 S.E. (2d) 820 (Ct. App. 1992). Regardless of whether the accused offers evidence of his good character, an accused who takes the stand may be cross-examined about past transactions tending to affect his credibility. *Major*, 301 S.C. at 183, 391 S.E. (2d) at 237. The accused may be asked about prior bad acts, not the subject of a conviction, which go to his credibility. If the accused denies the prior misconduct, the state must accept the answer.[2] *Id.*

Having thoroughly reviewed China's testimony, we conclude there was no error in allowing the state to attempt to impeach China during cross-examination.

## II. *Refusal to Hold Hearing to Determine the Competency of the Victim to Testify at Trial*

China next contends the trial court erred in refusing to inquire into the competency of the victim to testify. At the outset of the trial the defense requested a hearing to determine the competency of the victim to testify.

It is the duty of a trial judge to determine competency of a witness to testify and to make an appropriate examination of the witness upon timely motion of counsel that will reveal to the trial judge's satisfaction the witness's ability to give competent testimony. *State v. Pitts*, 256 S.C. 420, 182 S.E. (2d) 738 (1971). To make such an inquiry, however, there must be some evidence of the lack of capacity of the offered witness. Lack of capacity may be evidenced by the general demeanor of the witness, the age of the witness, or the presentation to the court of the witness' psychological profile through expert testimony. *Id.*

---

[2] China complains that the state was allowed to "parade" the woman he allegedly fondled at Cover Manufacturing before the jury. It is apparent from the record and representation of counsel during oral argument that during the cross-examination of China the state had the woman stand in response to "and weren't you discharged because you grabbed this young woman by the breast?" China denied the allegation and the state was not allowed to call the young woman as a witness on defense's motion. We see nothing prejudicial or unusual about the practice of having persons the subject of the examination stand for identification in the courtroom.

The bare assertion, as here, challenging the competency of the witness to testify is not sufficient to require an examination by the trial judge. *Cf. State v. Hardee,* 279 S.C. 409, 308 S.E. (2d) 521 (1983); *State v. Green,* 267 S.C. 599, 230 S.E. (2d) 618 (1976) (qualification of a witness is within the trial judge's discretion and the trial judge's ruling will be reversed only for an abuse of discretion).

The trial judge had ample opportunity to observe the victim during her testimony. The motion to exclude her testimony was not renewed and it is clear from the reading of the record that any discrepancies in her testimony went to the weight of probative value and were for consideration by the jury.[3]

The only showing of incompetency was the assertion by defense counsel that he had briefly spoken with the victim and he believed that the victim was either mildly retarded or had some degree of learning disability. No proof was offered by the defense and the trial judge observed that no one had presented him with a psychiatric report. The defense counsel admitted they had "nothing other than [counsel's] conversations with her."

### III. *Admission of Testimony Regarding Genetic Testing*

At trial the state offered testimony that the genetic material in the semen found in the victim matched the genetic material in the blood sample taken from China. The trial court held an extensive *in camera* hearing and received testimony from both the experts for the state and for the defense before admitting the testimony. China claims that the admission of this evidence was error. We disagree.

Restriction Fragment Link Polymorphism (RFLP) analysis involves scientific techniques which have been generally accepted by the professional community. Therefore, DNA analysis may be admitted in judicial proceedings in this state in the same manner as other scientific evidence routinely used in trial courts. *State v. Ford,* 301 S.C. 485, 392 S.E. (2d) 781 (1990). The Supreme Court, however,

---

[3] It should be noted that the trial judge later refused to instruct the jury on third-degree criminal sexual conduct because there was no testimony the victim is mentally defective.

leaves available to a defendant the traditional challenges as to the admissibility of DNA evidence. Generally, these challenges and the issues raised therein relate only to the weight or probative value of the evidence and not to the admissibility. In order to be excluded, the evidence must be found to be so tainted that it is totally unreliable. The issue of admissibility remains within the discretion of the trial judge. *Ford*, 301 S.C. at 490, 392 S.E. (2d) at 784.

The state's witness testified as follows:

> A. DNA is like any other chemical substance; it can be degraded to the point that it's not usable. But it's not going to result in a false positive. It's not going to result in a false positive. It's not going to result in a false negative. Degradation can be identified very easily. Its affects are known and it's not going to result in the wrong answer.
>
> Q. How would you characterize the results in this case?
>
> A. The results in this case are extremely clear cut. The autorads that are the results are extremely good. It's one of the best cases I've ever worked in terms of high quality autorads, high quality profiles, very little degradation present in any of the samples. Just an extremely good case.

It is obvious from this testimony that the finding by the trial judge that the sample was not contaminated and would not be unreliable is supported by the evidence and, therefore, was not an abuse of discretion.

The trial judge qualified the individual performing the RFLP analysis and presenting the testimony as knowledgeable in the procedure. The only other remaining attack, therefore, under the requirements of *Ford*, would be whether or not the procedure itself was properly performed. *Ford* specifically holds that issues pertaining to the performance of the procedure and the prejudicial effect of improperly performed procedures in a specific test may be raised by way of impeachment. *Ford*, 301 S.C. at 490, 392 S.E. (2d) at 784.

As we have already stated, an extensive *in camera* hearing was conducted and the experts for the state and for the defense testified at length as to the procedure. This testimony

was again presented to the jury for its assessment of credibility, weight, and probative value.

After a careful reading of the record we are convinced that the DNA evidence was properly admitted and that there is ample evidence to support the trial judge's implicit finding that the procedure utilized by the FBI was in accordance with generally accepted scientific standards and the results obtained were reliable. In addition, the above issues were more than adequately presented to the jury for their determination subsequent to the *in camera* hearing. We, therefore, find no error.

### IV. *Refusal to Permit Recross-examination of the State's Expert Witness*

During both *in camera* hearings and before the jury, the trial judge permitted redirect examination by the prosecution. The trial judge, however, did not permit recross by China.

China did not make a proffer to the trial judge. This issue, therefore, is not preserved for appeal. *State v. Anderson,* 304 S.C. 551, 406 S.E. (2d) 152 (1991) (in the absence of a proffer of excluded testimony, a reviewing court is unable to determine whether the appellant was prejudiced).

### V. *Reply Testimony by the State*

The court permitted the State's expert on DNA to testify in reply. On appeal China argues this witness testified to hearsay and also to matters which were not a proper subject of reply testimony. The record shows no objection based on the improper reply testimony. In addition, although there was an objection based on hearsay, the testimony, if it was hearsay, was harmless in view of the testimony at trial as a whole.

For the reasons given, the judgment appealed from is

Affirmed.

CURETON, J., and LITTLEJOHN, Acting Judge, concur.