598 S.E.2d 735

**The STATE, Respondent,**

v.

**Carla TAYLOR, Appellant.**

**No. 3837.**

Court of Appeals of South Carolina.

Heard April 21, 2004.

Decided June 24, 2004.

---

20

J. Falkner Wilkes, of Greenville, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

HOWARD, J.:

Carla Taylor was convicted of trafficking in twenty-eight grams or more of crack cocaine in violation of S.C.Code Ann. section 44–53–375(C)(2) and possession of a firearm during the commission of a violent crime in violation of S.C.Code Ann. section 16–23–490. On appeal, Taylor argues the trial court erred in admitting into evidence crack cocaine seized at the time of her arrest because the State failed to call the police evidence custodian as a witness to establish a complete chain of custody.[1] We affirm.

## FACTS/PROCEDURAL HISTORY

Following a traffic stop on I–85 in Greenville County, Highway Patrol Trooper Shannon Webber arrested Taylor for trafficking in crack cocaine and possession of a firearm during the commission of a violent crime when a consent search of the car she was driving yielded 36.16 grams of crack cocaine and a handgun. Taylor was subsequently indicted and tried for both offenses.

---

1. Taylor did not challenge the admission of the weapon at trial. The State argues on appeal that the weapon conviction is not implicated by Taylor's attack on the conviction for the underlying offense of trafficking in crack cocaine. Because we affirm the trafficking conviction, we need not address this issue.

At trial, the State offered the following evidence to establish the chain of custody of the crack cocaine seized in the arrest.[2] Trooper Webber testified he took possession of a substance believed to be crack cocaine at the scene of the arrest, placing it in a "best evidence bag" along with a form detailing all pertinent information.[3] He then sealed the bag and turned the evidence over to his superior officer, Sergeant Long. According to Webber, once sealed, the bag could not be opened without tearing it.

Sergeant Long testified that he transported the best evidence bag containing the substance to the Department of Public Safety's central evidence locker in Columbia. He then turned it in to the evidence custodian, Dale Blackmon.[4]

At the time of trial, Dale Blackmon was no longer employed by the Department of Public Safety, and did not testify. In lieu of Blackmon's testimony, the State called the successor custodian, Corporal Price. Price explained that only the evidence custodian had access to the evidence locker, with the exception of the supervisor and administrative assistant, who could receive evidence when the custodian was not on duty. He further testified regarding protocol and procedure for the handling and storage of evidence by the custodian, explaining each officer was assigned his or her own storage locker inside of a safe within the locker room. According to Price, a dangerous drug such as cocaine is not retained by the custodian in the evidence locker, but is immediately taken by the custodian to SLED. Once analyzed, it is placed back in the original evidence bag by the SLED chemist and is heat-sealed in another bag. The SLED chemist then returns the drug to the Department's evidence locker room where it is placed in the individual locker designated solely for the arresting offi-

---

2. Taylor objected to the use of affidavits to establish the chain of custody in accordance with Rule 6(b), SCRCrimP.

3. According to the testimony, this information included: a control number used throughout the chain of custody, the officer's name and employing agency, the date, the defendant's name, whether or not the arrest was lawful, the location of the arrest, and a brief description of the substance placed in the bag.

4. Blackmon's name appears incorrectly throughout the record as Blackburn.

cer. In this case, it remained in Trooper Webber's locker until retrieved by Price for trial.

Chemist Ford testified that he retrieved the evidence from the lockbox at SLED; immediately inspected it to assure there were no holes, punctures, or tears in the best evidence bag; and ensured the original seal by Webber had not been broken. After determining there were no signs of tampering, Ford broke the bag open, tested it, and determined it contained 36.16 grams of crack cocaine. He then placed the crack cocaine and the original best evidence bag into another evidence bag, heat-sealed it, labeled it, and placed it back in the vault.

Over defense counsel's objection, the trial court admitted the crack cocaine into evidence, ruling the State had provided sufficient evidence of the chain of custody without the testimony of the missing evidence custodian. Thereafter, Taylor was convicted by a jury of trafficking in crack cocaine in an amount exceeding thirty grams and possession of a firearm during the commission of a violent crime. Taylor was sentenced to fifteen years imprisonment on the trafficking offense and five years on the weapon offense.

## DISCUSSION

On appeal, Taylor argues the testimony of everyone who handled the evidence, including that of the former evidence custodian, Dale Blackmon, was necessary to establish the chain of custody. Without Blackmon's testimony, Taylor argues, the evidence was inadmissible under the authority of *State v. Chisolm*, 355 S.C. 175, 584 S.E.2d 401 (Ct.App.2003), *cert. denied* (April 8, 2004) and *State v. Joseph*, 328 S.C. 352, 491 S.E.2d 275 (Ct.App.1997). We reject Taylor's broad reading of these cases as requiring the testimony of all persons handling the evidence as a condition of admissibility.

A party offering into evidence fungible items such as drugs or blood samples must establish a chain of custody as far as practicable. *See, e.g., Benton v. Pellum*, 232 S.C. 26, 33, 100 S.E.2d 534, 537 (1957); *State v. Cribb*, 310 S.C. 518, 522, 426 S.E.2d 306, 309 (1992); *State v. Joseph*, 328 S.C. 352, 364, 491 S.E.2d 275, 281 (Ct.App.1997); *State v. Johnson*, 318 S.C. 194, 196, 456 S.E.2d 442, 443 (Ct.App.1995). Where the

analyzed substance has passed through several hands, the evidence must not leave it to conjecture as to who had it and what was done with it between the taking and the analysis. While the proof of chain of custody need not negate all possibility of tampering, it must establish a complete chain of evidence as far as practicable. *State v. Williams,* 297 S.C. 290, 293, 376 S.E.2d 773, 774 (1989); *Johnson,* 318 S.C. at 196, 456 S.E.2d at 443.

The admission of evidence is addressed to the sound discretion of the trial judge. *Williams,* 297 S.C. at 293, 376 S.E.2d at 774; *Raino v. Goodyear Tire and Rubber Co.,* 309 S.C. 255, 258, 422 S.E.2d 98, 100 (1992); *Johnson,* 318 S.C. at 196, 456 S.E.2d at 443. On appeal, the question presented is whether the trial court's decision is controlled by an error of law or is without evidentiary support. *State v. Irick,* 344 S.C. 460, 463, 545 S.E.2d 282, 284 (2001); *State v. Hughey,* 339 S.C. 439, 453, 529 S.E.2d 721, 728–729 (2000); *see also State v. Brazell,* 325 S.C. 65, 78, 480 S.E.2d 64, 72 (1997). If there is any evidence to support the trial judge's decision, the appellate courts will affirm it. *State v. Wilson,* 345 S.C. 1, 7, 545 S.E.2d 827, 829 (2001).

Where the identity of persons handling the evidence is unknown, our courts have consistently held the evidence is inadmissible. In *Benton v. Pellum,* 232 S.C. 26, 100 S.E.2d 534 (1957), our supreme court upheld the trial judge's exclusion of the results of blood alcohol tests where blood was drawn from the defendant driver following an automobile accident and transported over the Christmas holiday to the Medical College in Charleston for testing. Although there was testimony of the hospital's *customary* practice regarding the mailing of the blood, there was no evidence that the technologist who drew the blood had sealed the vials or had otherwise taken any precautions against tampering. The record did not disclose who had possession of the package containing the vials of blood for several days, and it left the identity of those who handled the vials and the manner of transportation to conjecture. The unidentifiable handlers were missing links in the chain of custody, rendering the evidence inadmissible.

Subsequently, in *State v. Williams,* 301 S.C. 369, 392 S.E.2d 181 (1990), and *State v. Cribb,* 310 S.C. 518, 426 S.E.2d 306 (1992), our supreme court reiterated the holding in *Benton v. Pellum,* noting that it is an abuse of discretion to admit the results of a blood alcohol test where the identity of those who sealed, labeled, and transported the blood sample is not established. *Cribb,* 310 S.C. at 522, 426 S.E.2d at 309. *See also Raino,* 309 S.C. at 258, 422 S.E.2d at 100 (ruling the trial judge did not abuse his discretion in excluding blood test results where the evidence failed to establish who handled the blood).

In each of these cases the party offering the results failed to trace the handling of the evidence from the time it was gathered until it was tested. As a result, the identity of the people who had control of the evidence and what was done with it during their possession was left to speculation.

In contrast, where there is evidence to establish the identity of those who have handled the evidence and the manner in which it was handled, a weakness in the chain merely raises a question of credibility, not admissibility. The seminal case establishing this principle in South Carolina is *State v. Williams,* 297 S.C. 290, 376 S.E.2d 773 (1989). In *Williams,* our Supreme Court affirmed the decision of the trial court to admit blood test results even though the nurse who had drawn the blood of the defendant and placed it in the hospital refrigerator did not testify. In that case, Nurse Yorke, who removed the blood sample from the locked hospital refrigerator the morning after the accident and took it to the lab for testing, did testify. According to her, the vial was labeled with appellant's name, patient number, date of birth, and the date the blood was drawn. The hospital's internal chain of custody form was initialed by the nurse who drew the blood, indicating she had obtained the sample from appellant and then locked it in the refrigerator. Under those circumstances, our supreme court ruled that the initialed form complying with hospital protocol and Nurse Yorke's testimony sufficiently established a chain of custody to allow admission. *Id.* at 293, 376 S.E.2d at 774.

Similarly, where the handling of the evidence is reasonably demonstrated, a weakness in the chain implicates

credibility, but does not render the evidence inadmissible. *State v. Kahan*, 268 S.C. 240, 244, 233 S.E.2d 293, 294 (1977) (ruling the ballistics test results of a nightgown worn by the deceased and placed in the evidence locker in a plastic bag were admissible even though there was no testimony as to the care and handling of the plastic bag containing the gown during the time it was in the evidence locker); *State v. Smith*, 326 S.C. 39, 482 S.E.2d 777 (1997) (affirming admissibility of blood tests even though the arresting officer stored the blood sample in his home refrigerator prior to testing, noting that there was no evidence of tampering); *Johnson*, 318 S.C. at 196, 456 S.E.2d at 444 (upholding the admission of drug evidence where a discrepancy existed as to the dates of possession of persons in the chain of custody).

Recently, in *State v. Carter*, 344 S.C. 419, 544 S.E.2d 835 (2001), our supreme court again noted the distinction between a question of admissibility and a question of credibility of the evidence, stating

> [w]e have found evidence inadmissible only where there is a missing link in the chain of possession because the identity of those who handled the blood was not established at least as far as practicable.... On the other hand, where the identity of persons handling the specimen is established, we have found evidence regarding its care goes only to the weight of the specimen as credible evidence.

*Id.* at 424, 544 S.E.2d at 837–838.

We believe it is clear from these decisions that if the identity of each person in the chain handling the evidence is established, and the manner of handling is reasonably demonstrated, no abuse of discretion is shown in the admission, absent proof of tampering, bad faith, or ill-motive. In the case at bar, there is evidence to establish the identity of each person in the chain of possession and the manner of handling the crack cocaine. The evidence shows that the arresting officer placed the crack cocaine in a special bag provided to preserve the integrity of the evidence against tampering. It contained a glue-like seal that, once applied, was stronger than the bag. Hence, the bag could not be opened without tearing it. The arresting officer then gave the bag to Sergeant Long to transport to the evidence custodian for safekeeping.

Sergeant Long provided evidence of the next two links in the chain, himself and the non-testifying evidence custodian, Dale Blackmon, to whom he gave the sealed evidence bag containing the drugs. Corporal Price, the current custodian, provided evidence of Blackmon's handling of the substance as the custodian during the time it was in her control, explaining that security and protocol required Blackmon to deliver the substance to the SLED chemist's evidence drop box. The SLED chemist, the next link in the chain, corroborated this delivery and testified the bag was intact when it was received for testing, identifying himself as the next link in the chain. In the same manner Nurse Yorke's testimony, coupled with the hospital forms, adequately established the chain of custody in *State v. Williams*, each person handling the crack cocaine was identified and the manner in which it was handled explained sufficiently to establish admissibility of the evidence here. In reaching this conclusion, we reject Taylor's reading of *State v. Chisolm* and *State v. Joseph*, to require that all persons in the chain of custody testify to establish admissibility.

In *Chisolm*, the defendant was arrested for distribution of crack cocaine and distribution of crack cocaine within the proximity of a school when he sold crack cocaine to an undercover agent. Following his arrest, the arresting officer placed the crack cocaine into an evidence bag comparable to the best evidence bag in this case. He then sealed the bag and placed it into a locked metal drop box at the police station.

Subsequently, dates and signatures on the possession forms for the evidence bag indicated the first evidence technician retrieved the crack cocaine from the lock box on May 10, 2000. The next notation indicated a second evidence technician delivered the evidence bag to a third technician on June 15, 2000. No evidence existed within the record indicating how long the first technician possessed the bag, in what condition he received it, where it was stored, or how the second technician came into possession of the bag. Furthermore, neither the first nor the second technician testified at trial.

Under those circumstances, a three judge panel of this court reversed the conviction, holding the cocaine was inadmissible because no evidence existed to establish either the where-

abouts of the evidence between May 10 and June 15 or how the second technician came into possession of the evidence bag. In other words, the identity of the persons handling the evidence was left to conjecture. In so ruling, the Court stated: "Custodial signatures on an evidence bag fail to establish an adequate chain of custody where the custodians do not provide testimony under oath or produce sworn statements pursuant to Rule 6(b), SCRCrimP." *Id.* at 801, 584 S.E.2d at 404.

Notwithstanding the language quoted above, we do not read *Chisolm* to require the testimony of each evidence custodian as a prerequisite to admissibility. Rather, *Chisolm* applies the longstanding rule that where there are unexplained gaps in the chain of possession, leaving to conjecture the identities of the people who handled the evidence and the manner of handling, the evidence is inadmissible. To the extent the language quoted above can be read to require the testimony of each person in the chain of custody under all circumstances, it is inconsistent with the precedent established by our supreme court, and is hereby overruled.

Likewise, we find *State v. Joseph*, 328 S.C. 352, 491 S.E.2d 275 (Ct.App.1997) equally distinguishable. In *Joseph*, the trial judge admitted the Rule 6, SCRCrimP, affidavit of the chemist who analyzed the drugs in lieu of his testimony over the defendant's timely objection. Not only had the chemist tested the drugs, he also kept them for over six months outside of the controlled environment of the evidence locker room.

Construing Rule 6, this court held the affidavit was inadmissible. The admission of the affidavit, which contained the analysis report including the opinion of the chemist, violated the defendant's right to cross-examine the chemist. Furthermore, because it was inadmissible and the chemist did not testify, there was no admissible evidence to explain where the drugs had been or how they were handled during the six months. Neither the identity of the person in possession nor the manner of handling was established without the inadmissible affidavit. Consequently, there was a gap in the chain of custody.

Unlike *Chisolm* and *Joseph*, in this case the State introduced evidence to establish the identity of each person in the chain of possession and the manner of handling. Consequent-

ly, we find no abuse of discretion in the admission of the crack cocaine into evidence. For the foregoing reasons, Taylor's convictions are

**AFFIRMED.**

HEARN, C.J., GOOLSBY, ANDERSON, HUFF, STILWELL, BEATTY, KITTREDGE, JJ., and CURETON, Acting J., concur.