THIS
 OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 Lloyd Wright, Appellant.
 
 
 

Appeal From Charleston County
 Kristi Lea Harrington, Circuit Court
Judge

Unpublished Opinion No. 2011-UP-363
 Submitted April 1, 2011  Filed June 30,
2011    

AFFIRMED

 
 
 
 Appellate Defender LaNelle Cantey DuRant,
 of Columbia, for Appellant.
 Attorney General Alan M. Wilson, Chief
 Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General
 Salley W. Elliott, and Assistant Attorney General Harold M. Coombs, Jr., all of
 Columbia; Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.
 
 
 

PER CURIAM:  While
 investigating a potential "open-air" illegal drug market, the
 Charleston Police Department, in conjunction with the Federal Bureau of
 Investigation (FBI), conducted an undercover operation in September of 2007. 
 On September 17, Investigator Karen Springmeyer, operating undercover, drove to
 an area known as Athens Court.  She noticed several "subjects," one
 of whom told her to pull down a side street.  There, a man, allegedly Lloyd
 Wright, approached her vehicle, and she told him she wanted to buy some crack. 
 The man reached in the car and handed her the drugs, and she paid him $50.00 in
 "marked money" the FBI provided for the the operation.  Springmeyer then
 returned to her unit and delivered the crack to Investigator Seabrook, the case
 agent.  
Three
 weeks later, Wright was arrested for the drug transaction.  The marked money
 was never recovered.  Wright was tried for distribution of cocaine base and distribution
 of cocaine base within a close proximity of a school, and he was convicted of
 both charges.  The trial court sentenced him to life without the possibility of
 parole.  This appeal followed.  
STANDARD OF
 REVIEW
In
 criminal cases an appellate court sits to review errors of law only.  State
 v. Baccus, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).
LAW/ANALYSIS
Wright's
 alleges the trial court erred in failing to strike Hurteau's testimony because
 he lacked personal knowledge.  We disagree.  Wright specifically indicated to
 the trial court that the basis for his objection was Rule 612, SCRE, which
 provides the following:

 If a witness uses a writing to refresh
 memory for the purpose of testifying, either
 (1) while testifying, or
 (2) before testifying, if the court
 in its discretion determines it is necessary in the interests of justice, an
 adverse party is entitled to have the writing produced at the hearing, to
 inspect it, to cross-examine the witness thereon, and to introduce in evidence those
 portions which relate to the testimony of the witness. If it is claimed that
 the writing contains matters not related to the subject matter of the testimony
 the court shall examine the writing in camera, excise any portions not so
 related, and order delivery of the remainder to the party entitled thereto. Any
 portion withheld over objections shall be preserved and made available to the
 appellate court in the event of an appeal. If a writing is not produced or
 delivered pursuant to order under this rule, the court shall make any order
 justice requires, except that in criminal cases when the prosecution elects not
 to comply, the order shall be one striking the testimony or, if the court in
 its discretion determines that the interests of justice so require, declaring a
 mistrial.

Here,
 the trial court permitted, and the State did not prevent, Springmeyer's and
 Seabrook's reports to be marked as exhibits and allowed Wright the opportunity
 to review the documents and cross-examine Hurteau on them.  Accordingly, we see
 no grounds to allege error under Rule 612.[1]
Wright
 further argues the State violated Rule 5, SCRCrimP,[2] and Brady v. Maryland[3] in failing to provide a copy of the "operational plan."  We disagree.
Rule 5 provides in pertinent part:

 Upon request of the defendant the
 prosecution shall permit the defendant to inspect and copy books, papers,
 documents, photographs, tangible objects ... which are within the possession,
 custody or control of the prosecution, and which are material to the preparation
 of his defense or are intended for use by the prosecution as evidence in chief
 at the trial[] . . . .

Rule
 5(a)(1)(C), SCRCrimP.
Similarly, Brady holds that "the suppression by the prosecution of evidence
 favorable to an accused upon request violates due process where the evidence is
 material either to guilt or to punishment, irrespective of the good faith or
 bad faith of the prosecution."  373 U.S. at 87.  To establish such a due
 process violation, an accused must demonstrate "(1) the evidence was
 favorable to the accused, (2) it was in the possession of or known to the
 prosecution, (3) it was suppressed by the prosecution, and (4) it was material
 to guilt or punishment."  State v. Gibson, 334 S.C. 515, 524, 514
 S.E.2d 320, 324 (1999) (footnote omitted).  
Here,
 the State argued it neither had knowledge of nor possession of such a plan. 
 Likewise, the trial court found there had been no showing the operational plan
 was in the State's possession, the State had suppressed it, or the State failed
 to disclose it.  The evidence supports these findings.  Similarly, nothing in
 the record supports Wright's contention that the document, which Hurteau
 testified was for the purpose of protecting the public, the officers, and the
 suspects during the investigation, was material or exculpatory.  Accordingly,
 the trial court did not err.
Wright
 lastly argues the drug evidence should have been suppressed because the State
 failed to properly establish the chain of custody.  We disagree.  "[A] party
 offering into evidence fungible items such as drugs or blood samples must
 establish a complete chain of custody as far as practicable."  State v. Sweet,
 374 S.C. 1, 6, 647, S.E.2d 202, 205 (2007).  The determination of whether the
 State has established the chain of custody as far as practicable depends on the
 unique facts of each case.  State v. Hatcher, Op. No. 26950 (S.C. Sup.
 Ct. filed Mar. 21, 2011) (Shearouse Adv. Sh. No. 10 at 82-83).  "Testimony
 from each custodian of fungible evidence . . . is not a prerequisite to
 establish a chain of custody sufficient for admissibility." Sweet,
 374 S.C. at 7, 647 S.E.2d at 206 (citing State v. Taylor, 360 S.C. 18,
 27, 598 S.E.2d 735, 739 (Ct. App. 2004)).  "Where other evidence establishes
 the identity of those who have handled the evidence and reasonably demonstrates
 the manner of handling of the evidence, our courts have been willing to fill
 gaps in the chain of the custody due to an absent witness."  Id.  "[W]here
 all individuals in the chain are, in fact, identified and the manner of
 handling is reasonably demonstrated, it is not an abuse of discretion for the
 trial judge to admit the evidence in the absence of proof of tampering, bad
 faith or ill-motive."  Hatcher, Op. No. 26950, at 81.  
In
 this case, the essence of Wright's argument is (1) Seabrook failed to sign the
 evidence sheet and as a result Wright was unaware Seabrook was in the chain of
 custody until the time of trial and (2) Joe Lelama, the evidence technician who
 signed the evidence into the evidence room, did not testify.  
In
 this case, although Seabrook forgot to sign the evidence sheet, he testified
 that he delivered the evidence in a sealed package to the Charleston Police
 Department's evidence lock box.  Similarly, although Lelama did not testify,
 Hinton testified that Lelema received the evidence on September 20, 2007, based
 on his recognition of Lelama's initials on the property sheet and evidence
 tag.  Then, Susan Moody testified she retrieved the evidence from the evidence
 room, signed it out, and transported it to the laboratory for analysis. 
 Finally, laboratory manager Elizabeth Wiggins-Mitchell testified she received
 the sealed evidence bags, tested the evidence, determined it was cocaine base,
 and replaced it into a new sealed container bearing her initials.  Moreover,
 she identified this sealed container, which bore her initials, in court. 
 Accordingly, we find the trial court did not abuse its discretion in admitting
 the evidence.  
CONCLUSION
The
 ruling of the trial court is
AFFIRMED.
FEW,
 C.J., THOMAS and KONDUROS, JJ., concur.

[1]  Wright argues
 Hurteau's testimony should also have been striken under Rule 602, SCRE. 
 Notwithstanding that Wright specifically clarified to the trial court the basis
 for his objection was Rule 612, the trial court noted that Hurteau had personal
 knowledge by virtue of being at the scene during the controlled buy.  We agree
 and note that any defect in his memory was for the jury to weigh.  
[2]  We note that although Wright did not make a precise
 objection based on Rule 5, at the outset of his motion before the trial court
 he did note that the operational plan "was not provided in discovery[] . .
 . [and that he] believe[d] it was discoverable."  
[3] 373 U.S. 83 (1963).