[No. 47873-7-I. Division One. August 5, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD MAULE, *Appellant*.

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *David M. Seaver, Deputy*, for respondent.

ELLINGTON, J. — A trial court has considerable latitude in choosing the procedure for determining competency, and may proceed by any means which permits the parties to be heard and allows the court to make a well-informed judg-

ment. The chief issue in this case is whether due process requires that defense counsel be permitted to cross-examine a child witness at a pretrial competency hearing. We hold that precluding such cross-examination does not necessarily violate due process.

Here, counsel's proposed examination would not have been helpful to the determination of competency, and the procedure for questioning the child did not violate Maule's due process rights. We therefore affirm Maule's convictions for first degree child molestation and sexual exploitation of a minor. We address other issues in the unpublished part of this opinion.

## FACTS

Donald Maule is married to Anna Maule. Melissa and Lydia are Anna's daughters from a previous marriage, and A.S. is Melissa's daughter. Maule is therefore A.S.'s step-grandfather. In December 1999, Maule was 56 years old and A.S. was 7.

Anna, Lydia, and Maule lived together in his Auburn home. On December 29, 1999, Lydia was babysitting A.S. at the house. Maule was at his computer with A.S. sitting on his lap. Lydia's boyfriend, John Boyatt, saw that Maule had his hand under A.S.'s shirt and was stroking her chest. Maule's behavior made John nervous, and he went upstairs to tell Lydia what he had seen. By the time they returned, Maule was elsewhere and A.S. was alone at the computer. Lydia saw a blurred image on the computer and asked A.S. what it was. She replied, "It's a butt."[1] When asked whose butt it was, A.S. said that it was hers. She said she took the pictures because Maule teased her and called her "chicken."[2]

Lydia took A.S. into a bathroom to talk privately, and A.S. became upset. Lydia asked her if Maule had touched her,

---

[1] Report of Proceedings (RP) (Sept. 26, 2000) at 28.

[2] RP (Sept. 26, 2000) at 28.

and she replied, "No."[3] When Anna returned home, A.S. again denied that Maule had touched her. But when her mother, Melissa, picked her up, A.S. said that Maule had touched her crotch through her clothes while she was sitting on his lap at the computer.

Maule was arrested and his computer was seized. On one of Maule's floppy disks, police recovered 10 images of child pornography, which had been downloaded from two web sites with explicitly descriptive internet addresses. Records of visits to those sites were found on Maule's hard drive. Maule told Detective Stocker that he viewed pornography on his computer, and the detective would probably find some "child-type" photos on the computer.[4]

The State charged Maule with first degree child molestation and sexual exploitation of a minor. By the time of trial, A.S. was eight years old. The court held a hearing to determine her competency as a witness. The prosecutor questioned A.S. about her age, where she lived, whether she knew the difference between the truth and a lie, and what she did for her last birthday. Defense counsel then sought to cross-examine. After hearing counsel's proposed line of inquiry, the court concluded counsel's questions would not help determine whether A.S. was competent, and denied the request to cross-examine.

The court found A.S. competent and the trial proceeded. Nicole Farrell, a child abuse investigator at the King County Prosecutor's Office who had interviewed A.S., testified that A.S. said Maule told her to use the digital camera on his computer to take pictures of her "behind" and "in front" with her pants and underwear off.[5] A.S. was reluctant, but Maule kept calling her "frady-cat" until she relented.[6] A.S. also told Farrell that Maule had rubbed her

---

[3] RP (Sept. 26, 2000) at 60.

[4] RP (Sept. 27, 2000) at 41.

[5] RP (Sept. 27, 2000) at 113.

[6] RP (Sept. 27, 2000) at 113.

crotch area, over her pants, as they sat at the computer, saying "this is where I always rub grandma."[7]

A.S.'s testimony was similar to her disclosures to Farrell. A.S. testified that Maule told her to take pictures of her "private spots" with his digital camera, and that he kept calling her "chicken."[8] She also testified that he put his hand on her "private spot" while she was sitting on his lap at the computer.[9]

Maule denied abusing A.S. He testified that A.S. took a picture of his rear-end, so he told her, "That's kind of chicken-shit, take a picture of your own butt."[10] He claimed that he did not intend for her to actually photograph herself, and denied touching her vagina while she sat on his lap. He also testified that he never intentionally put his hand under her shirt, but that her shirt may have lifted up when she reached for something on the computer desk, and that his hand may have ended up underneath the shirt. He testified that he occasionally viewed adult pornographic web sites, and that images of child pornography would sporadically "show up," but claimed that he did not download them.[11]

The jury convicted Maule of first degree child molestation and sexual exploitation of a minor.

## Due Process at Child Competency Hearings

The trial court has a threshold obligation to ensure witnesses are competent to testify. Competency is thus a question of fact to be determined by the trial court.[12] The

---

[7] RP (Sept. 27, 2000) at 117.

[8] RP (Sept. 26, 2000) at 102.

[9] RP (Sept. 26, 2000) at 103.

[10] RP (Sept. 28, 2000) at 91.

[11] RP (Sept. 28, 2000) at 111.

[12] *State v. Watkins*, 71 Wn. App. 164, 170, 857 P.2d 300 (1993).

burden of proving incompetency is on the party opposing the witness.[13]

■ Courts consider five factors when determining competency of a child witness; absence of any one of which renders the child incompetent to testify:

(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.[14]

■ The procedure for determining competency, including the nature of the questioning, "rest[s] primarily with the trial judge who sees the witness, notices his manner, and considers his capacity and intelligence."[15] The trial court may find it appropriate to limit voir dire to its own questions,[16] especially where the witness is a child who is particularly vulnerable, or where the court fears unduly intimidating questioning by counsel. Like the child's demeanor, these concerns may not be reflected in the record on appeal, and are among the reasons the procedure at child competency hearings "lies within the sound discretion of the trial judge."[17]

Such determinations obviously depend on the facts of each case, and make general rules elusive and inappropriate. No single method of determining competency can be prescribed for all situations.

---

[13] *Watkins*, 71 Wn. App. at 169 (citing 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 208, at 122 (3d ed. 1989)).

[14] *State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967); *see also In re Dependency of A.E.P.*, 135 Wn.2d 208, 223, 226, 956 P.2d 297 (1998).

[15] *Allen*, 70 Wn.2d at 692; *see* RCW 5.60.050(2).

[16] *See United States v. Spoonhunter*, 476 F.2d 1050, 1055 (10th Cir. 1973), *superseded by rule on other grounds as stated in United States v. Allen J.*, 127 F.3d 1292 (10th Cir. 1997).

[17] *Allen*, 70 Wn.2d at 692.

█ Maule contends due process requires that defense counsel be permitted to cross-examine a child witness at a competency hearing, particularly where the prosecutor has been permitted to do so. "Due process is a flexible concept calling for those procedural protections demanded by the nature of the interest affected and the context in which the alleged deprivation occurs."[18] Courts balance three factors when determining the scope of due process protections: "(1) the significance of the private interest to be protected; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the fiscal and administrative burdens that the additional procedural safeguards would entail."[19]

Here, the first and third factors favor procedural safeguards. The interest Maule seeks to protect is his liberty, an "obviously substantial" interest;[20] the State's interest in testimony from a witness who is incompetent is nil, and allowing defense cross-examination in a competency hearing would impose nothing in the way of additional fiscal or administrative burdens.

█ The question is whether the risk of erroneous deprivation of liberty is unjustifiably high if defense counsel is not permitted to cross-examine the child in every competency hearing. Maule contends it is because, unless defense counsel is always permitted to cross-examine, there is substantial risk of incompetent testimony. But the issue is not who conducts the questioning—judges may conduct all the questioning themselves. Rather, whether there is a risk of incompetent testimony depends upon whether the parties have the opportunity to be heard, and whether the procedure is such that the court is fully apprised of circumstances affecting the competency determination. Cross-

---

[18] *Stone v. Prosser Consol. Sch. Dist. No. 116*, 94 Wn. App. 73, 76, 971 P.2d 125 (1999) (citing *Morris v. Blaker*, 118 Wn.2d 133, 144, 821 P.2d 482 (1992) and *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)).

[19] *Stone*, 94 Wn. App. at 76 (citing *Mathews*, 424 U.S. at 335).

[20] *In re Interest of M.B.*, 101 Wn. App. 425, 471, 3 P.3d 780 (2000), *review denied*, 142 Wn.2d 1027 (2001).

examination may be the preferable means, but it is not the only means by which to accomplish those objectives. If counsel suggests a line of questioning that will help determine whether the child is competent,[21] the court may permit counsel to examine, or may conduct the questioning itself. This method affords the party with the burden of demonstrating incompetence the opportunity "to be heard at a meaningful time and in a meaningful manner."[22] On the other hand, if counsel's suggested questions will not illuminate the issue, refusing to permit the questions has no effect on either a well-informed decision or on a defendant's right to be heard.

We find persuasive the reasoning of the Supreme Judicial Court of Massachusetts in *Commonwealth v. Massey*.[23] There, as here, the trial court permitted the prosecutor, but not the defense attorney, to question a child at a competency hearing. The prosecutor asked the child 32 questions, and the trial court asked 5 of its own questions. The Massachusetts court held this procedure did not violate the defendant's right to due process or to a fair trial:

> Not every instance of voir dire participation by the prosecution gives rise to a concomitant right of cross-examination by defense counsel. In this case, the questions asked by the prosecutor went beyond the "introductory and mechanical" ones validated in *Doucette*; still, it is difficult to see how the defendant was unfairly prejudiced. The prosecutor's questions were not leading, and made virtually no reference to the facts of the case. They were routine questions that almost certainly would have been asked by the judge, in substantially similar form, had he conducted the voir dire himself. To say that reversal is required simply because the prosecutor, instead of the judge, was the one who put the questions to the witness, "would elevate form over substance [in] invok[ing] the principle

---

[21] *See Spoonhunter*, 476 F.2d at 1055 (when counsel is not included in competence voir dire, it becomes counsel's obligation to suggest questions); *see also* 6 JOHN HENRY WIGMORE, EVIDENCE § 1820, at 397-98 (James H. Chadbourn ed., rev. ed. 1976).

[22] *Mathews*, 424 U.S. at 333 (citations omitted).

[23] 402 Mass. 453, 523 N.E.2d 781 (1988).

that, if the government is allowed to inquire, the defense may inquire." Moreover, the record of the child's testimony supports the judge's conclusion as to his competency. Although the better practice, and the only course proof against reversal on *Doucette* grounds, is for the judge either to conduct the voir dire himself or to allow both parties to participate, we decline to establish a per se rule that the practice here challenged automatically requires reversal in the absence of a showing of actual prejudice.[24]

The circumstances here are similar. The prosecutor's questions were routine and were not leading, and the fact that the questions were put by the prosecutor instead of the judge creates no prejudice to Maule.

Further, the refusal to permit cross-examination did not create a risk of incompetent testimony. Defense counsel suggested that A.S. was incompetent because, based on pretrial interviews, she did not remember past events very well and gave inconsistent accounts of the alleged molestation. After some colloquy, the trial court determined that counsel had no valid basis for questioning A.S.'s competency:

> Well, I would say that what you just read could have been an interview with an adult. I mean, you could do that with any adult that you've interviewed, also. In fact, I would say that there are many interviews of adults that have produced even less information than what you just read, and plenty of adults who say I don't remember, and we don't establish a competency requirement for every witness who takes the stand based on whether during an interview they said I don't remember or gave confusing or conflicting accounts. And that is simply all you are relating here.[25]

We agree with the court's conclusion that counsel raised no valid concerns about the child's competence. Moreover, A.S.'s testimony at trial raised no concerns about her ability to give truthful testimony or her capacity to form an accurate impression of the occurrence.

---

[24] *Massey*, 523 N.E.2d at 782 (citations omitted).

[25] RP (Sept. 20, 2000) at 94.

The trial court here afforded Maule the opportunity to demonstrate a basis for cross-examination. Once advised of counsel's concerns, the court concluded they were not concerns about competency. Maule thus had an opportunity to be heard, and the court was fully informed. There was no violation of due process.

Affirmed.

The balance of this opinion has no precedential value and will not be published, but will be filed for public record pursuant to RCW 2.06.040.

COLEMAN and SCHINDLER, JJ., concur.

Review granted at 148 Wn.2d 1020 (2003).