[No. 83415-6.   En Banc.]

Argued May 18, 2010.   Decided August 18, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. WILLIAM A. BROUSSEAU, *Appellant*.

334

*Jeffrey E. Ellis* (of *Oregon Capital Resource Center*), for appellant.

*Benjamin C. Nichols, Prosecuting Attorney*, for respondent.

¶1 MADSEN, C.J. — William A. Brousseau was convicted of first degree rape of a child and child molestation. The court held a pretrial hearing to determine whether the alleged victim, seven-year-old J.R., was competent to testify and whether her out-of-court statements were admissible under Washington's child hearsay exception, RCW 9A.44.120. The court heard testimony from Brousseau's witness, Dr. Scott Mabee, a psychologist who had interviewed the child, but did not permit Brousseau to call the child as a witness.

¶2 Brousseau claims that the trial court abused its discretion by finding J.R. competent without examining her at the competency hearing. He also claims that the court's refusal to allow testimony from J.R. at the competency hearing denied him due process of law under the state and federal constitutions. Brousseau does not claim, however, that J.R. was incompetent.[1]

[1] Brousseau initially contended that "J.R. was not competent to testify," but the basis for this assertion was that the judge could not make a competency determination without hearing testimony from J.R. at the competency hearing. Appellant's Br. at 10, 20. Then, in a supplemental opening brief, Brousseau clarified his challenge:

¶3 Brousseau further contends that subsection (2)(a) of RCW 9A.44.120 requires the child declarant to testify at the child hearsay hearing and that the trial court's refusal to permit J.R. to testify warrants reversal. Finally, he claims his counsel was ineffective.

¶4 Due process protects a criminal defendant against a conviction based upon incompetent evidence. However, under our recent holding in *State v. S.J.W.*, 170 Wn.2d 92, 239 P.3d 568 (2010), we reject Brousseau's contention that due process requires a child witness to be examined in a pretrial proceeding in every case in which a criminal defendant challenges the child's competency.

¶5 After reviewing the record, we hold that the trial court did not abuse its discretion in concluding that J.R. was competent to testify. Additionally, we hold that RCW 9A.44.120(2)(a) does not require a child to testify at a child hearsay hearing and that trial counsel was not ineffective. Accordingly, we affirm Brousseau's convictions.

## FACTS

¶6 Seven-year-old J.R. was staying alone with Brousseau, her mother's fiancé, while her mother was undergoing open-heart surgery. Brousseau generally left for work at 6:30 a.m., and J.R. would stay with her next-door neighbor, Ellen Klein, whose granddaughter attended J.R.'s school. Ms. Klein testified that at 6:30 a.m. on December 4, 2006, she noticed that the lights were out in Brousseau's house, and she telephoned to make sure Brousseau was awake. Soon thereafter, J.R. arrived at Ms. Klein's house.

---

Brousseau starts by clearly framing his claim of error: the trial court's refusal to permit any examination of the witness whose competence was questioned constituted a violation of the state and federal constitutions' due process requirements. In short, where the court holds a competency hearing, it violates due process to refuse to permit the testimony of the challenged witness. Thus, Appellant's claim of error focuses on the *procedure*, not the *outcome* of the hearing.

Suppl. Opening Br. at 5 (emphasis added).

¶7 Ms. Klein testified that later, while driving her granddaughter and J.R. to school, she asked J.R. if Brousseau had been upset about the wake-up call. J.R. responded, "Oh, no, he wasn't mad. He wasn't asleep. He was still in my bed." Verbatim Report of Proceedings (VRP) (Sept. 12, 2007) at 170. Ms. Klein asked if Brousseau always slept in J.R.'s bed, and when J.R. responded that he did so only on occasion, Ms. Klein could hear her granddaughter urge J.R., in a whisper, to tell Ms. Klein what Brousseau had said that morning. At first J.R. refused, but after being reassured, she replied, "He asked me to play with his penis." *Id.* at 171. She also indicated that Brousseau had touched her previously.

¶8 Ms. Klein contacted the school guidance counselor, Carla Metcalf. Ms. Metcalf met with J.R., who repeated her allegations and also indicated that Brousseau had requested that she play with his penis on previous occasions.

¶9 Later that day, Deputy Jackie Nichols interviewed J.R. with Ms. Metcalf and a representative from child protective services, Janet Beitelspacher, in attendance. After indicating that she could distinguish a truth from a lie, J.R. told Deputy Nichols essentially what she had told Ms. Klein and Ms. Metcalf. She also asserted, gesturing towards her vagina, that defendant had touched her "privates," and that "[h]e opened it, and he put his finger in, and it hurt." *Id.* at 238-40.

¶10 Brousseau was charged with first degree rape of a child and first degree child molestation. Prior to trial, he challenged J.R.'s competence to testify, and the court held a pretrial competency hearing. At that proceeding, the defense offered testimony from Dr. Scott Mabee, a psychologist who had interviewed J.R. to determine whether she met the legal criteria for testimonial competency. The defense had intended to call J.R. to offer additional testimony, but after hearing Dr. Mabee's testimony, the judge declined to hear testimony from J.R.

¶11 The court evaluated J.R.'s competency on the basis of Dr. Mabee's testimony, using the factors established in

*State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967), namely (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express his memory of the occurrence; and (5) the capacity to understand simple questions about it.[2]

¶12 Dr. Mabee testified that J.R. had the "capacity to understand the obligation to be truthful." VRP (Mar. 27, 2007) at 94. On the basis of this testimony, the trial court found the first *Allen* factor satisfied. Dr. Mabee also indicated that J.R. had "sufficient capacity to accurately store the occurrence of the events," thus satisfying the second *Allen* factor. *Id.* Dr. Mabee found that J.R. had "sufficient capacity to understand simple questions regarding the occurrence." *Id.* at 95. The court adopted his testimony that the fifth *Allen* factor had been met.

¶13 With regard to the third *Allen* factor, Dr. Mabee opined that J.R. had "limited memory capacity to independently recall the occurrence" but conceded that J.R. had been able to describe the alleged occurrences and provide a detailed, albeit uncorroborated, physical description of the bedroom in which she allegedly had been abused. *Id.* at 61, 65-69. In light of J.R.'s ability to provide details of this nature, the court found that the third *Allen* factor had been satisfied.

¶14 Finally, while Dr. Mabee opined that J.R.'s ability to express *abstract* concepts was "limited," *id.* at 95, the court held that the fourth *Allen* factor, namely the "capacity to express in words memory of the occurrence" did not require an ability to express abstract concepts and that, even if it did, J.R. was not entirely deficient in this regard, but simply

---

[2] While the trial court's competency determination predated the publication of *S.J.W.*, the trial court ultimately adhered to the standard we subsequently announced in *S.J.W.*, placing the burden on the defense to prove that J.R. was incompetent to testify.

"limited." *Id.* at 117. Thus, the court found J.R. to be competent to testify. Brousseau's counsel informed the court that he intended to call J.R. to testify, but the court declined to hear from the child.

¶15 Later the same day, the court heard testimony to determine whether to admit child hearsay statements. The State called various individuals to whom J.R. had reported sexual abuse, and each described J.R.'s out-of-court statements and the circumstances under which they were made.[3] The court applied the criteria set forth in *State v. Ryan*[4] and found that J.R.'s out-of-court statements to Ellen Klein, Carla Metcalf, and Deputy Nichols each bore the requisite indicia of reliability for admissibility under RCW 9A.44.120. *See State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984).

¶16 J.R. testified at trial and was subject to cross-examination. Direct examination began with the following exchange:

Q. A little nervous?

A. No.

Q. Huh-uh? [J.R.], just promise to tell the truth?

A. Yes.

Q. Can you tell me what that is?

---

[3] Brousseau did not offer J.R.'s testimony during the child hearsay hearing.

[4] In *Ryan*, we adopted the five factors we had set forth in *State v. Parris* to determine whether a child hearsay statement bore sufficient indicia of reliability under RCW 9A.44.120: " '(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness.' " *State v. Ryan*, 103 Wn.2d 165, 175-76, 691 P.2d 197 (1984) (quoting *State v. Parris*, 98 Wn.2d 140, 146, 654 P.2d 77 (1982)). We further adopted four additional factors from *Dutton v. Evans* to aid this determination: "(1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement . . . are such that there is no reason to suppose the declarant misrepresented defendant's involvement." *Ryan*, 103 Wn.2d at 176 (citing *Dutton v. Evans*, 400 U.S. 74, 88-89, 91 S. Ct. 210, 27 L. Ed. 2d 213 (1970)).

A. The truth is where I don't lie.

Q. What is a lie?

A. It means you are not telling the truth.

Q. Okay. Can you give me an example of something that would be the truth?

A. No.

Q. What if I said that my tie was purple?

A. You would be lying.

Q. Because my tie isn't purple, is it? What color is my tie?

A. Yellow.

VRP (Sept. 11, 2007) at 104. Next, before questioning J.R. about her allegations against Brousseau, the State proceeded to ask J.R. for specific details about her present life and her life at the time of the alleged abuse. Brousseau did not object to this line of questioning. J.R. was able to provide details as to her current living situation, her living situation at the time of the alleged abuse, her relationship to the defendant, the house she shared with Brousseau, her bedroom in that house, a friend in her former hometown, her siblings, her grade level at the time of the alleged abuse, the view from her old classroom, her mother's whereabouts at the time of the alleged abuse, and transportation arrangements in her former hometown. When questioned about the abuse, J.R. repeated her allegations against Brousseau.

¶17 The jury also heard testimony from Ellen Klein, Carla Metcalf, Deputy Nichols, Janet Beitelspacher, J.R.'s mother, Ms. Klein's granddaughter, Brousseau, and a number of expert witnesses. Brousseau did not renew his objections to J.R.'s competency.

¶18 Brousseau was found guilty of first degree rape of a child and first degree child molestation. He appealed, and Division Three of the Court of Appeals certified the matter to this court pursuant to RCW 2.06.030.

## ANALYSIS

¶19 Brousseau argues that the trial court abused its discretion in determining that J.R. was a competent witness where J.R. did not testify and Dr. Mabee identified deficiencies in J.R.'s competency. He further claims that the court's refusal to allow testimony from J.R. at the competency hearing denied him due process of law under the state and federal constitutions. In addition, he contends that subsection (2)(a) of RCW 9A.44.120 requires the child declarant to testify at the pretrial child hearsay hearing and that J.R.'s failure to do so is grounds for reversal. Finally, he claims his attorney was ineffective.

¶20 We afford significant deference to the trial judge's competency determination, and we may disturb such a ruling only upon a finding of manifest abuse of discretion. *State v. Leavitt*, 111 Wn.2d 66, 70, 758 P.2d 982 (1988) (citing *Allen*, 70 Wn.2d at 692). In making this determination, we may examine the entire record. *State v. Woods*, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005); *State v. Guerin*, 63 Wn. App. 117, 123, 816 P.2d 1249 (1991) (finding child competent on the basis of child's testimony at trial); *see also State v. Avila*, 78 Wn. App. 731, 737, 899 P.2d 11 (1995) ("Although a trial court determines competence pretrial, on appeal we will examine the entire record to review that determination."); 1 JOHN E.B. MYERS, EVIDENCE IN CHILD ABUSE AND NEGLECT CASES § 3.20, at 262-64 (3d ed. 1997) ("On appeal, the appellate court examines the child's entire testimony, and, if the testimony supports the trial court's findings regarding competence, the appellate court is unlikely to disagree."); *Barnes v. United States*, 600 A.2d 821, 824 (D.C. 1991) (court may consider child's trial testimony in reviewing trial court's competency finding for abuse of discretion); *State v. Allen*, 26,547 (La. App. 2 Cir. 12/07/94); 647 So. 2d 428, 434 (reviewing court considers child's trial testimony as a whole in upholding trial court's competency determination); *cf.* 2 CHARLES E. TORCIA, WHARTON'S CRIMINAL

EVIDENCE § 360, at 443 (14th ed. 1986) ("The question of a child's competency as a witness may be determined either from a preliminary examination or from his testimony before the jury, or from both.").[5]

¶21 In *S.J.W.*, we explained that under RCW 5.60.050, all witnesses—children and adults alike—are presumed competent until proved otherwise by a preponderance of evidence. 170 Wn.2d at 100. Because the statute treats children and adults identically, the same rules apply to both. Our holding in *S.J.W.* did not effect a change in law but merely clarified a longstanding principle; more than 50 years ago, this court held in a criminal case that unless a witness had been adjudicated insane, there was no presumption that the witness was incompetent. *State v. Pethoud*, 53 Wn.2d 276, 278, 332 P.2d 1092 (1958). We also held in *S.J.W.* that the burden of proving incompetency is on the party challenging the competency of the witness. *S.J.W.*, 170 Wn.2d at 102. We have consistently adhered to this rule as well. *See State v. Smith*, 97 Wn.2d 801, 803, 650 P.2d 201 (1982).

¶22 The presumption of competence persists throughout the proceedings but may be challenged at any time. Accordingly, to reverse the trial judge's competency ruling, we

---

[5] The dissent acknowledges that in *Woods* we stated explicitly that an appellate court may review the entire record in making this determination. Dissent at 364-65. Nevertheless, the dissent maintains that we relied only on testimony from the child competency hearing in reviewing the trial court's competency determination. *Id.* at 365-66. *Woods* does not bear that out. Indeed, such a limited review would make no sense when the inquiry was whether Woods' *conviction* rested on incompetent evidence. *See Woods*, 154 Wn.2d at 618-22.

The dissent also takes issue with our reliance on *State v. Guerin*, in which the court considered the child's trial testimony in reviewing the trial court's competency determination. Dissent at 364-65 (citing *Guerin*, 63 Wn. App. at 121-22). It is true, as the dissent notes, that in *Guerin* the court was concerned only with the child's competency at the time of trial because the defendant contended that the child had become incompetent between the pretrial hearing and trial. *Guerin*, 63 Wn. App. at 122-23. However, the dissent misses the critical point; even where the court is reviewing a pretrial competency determination, the inquiry is always whether the child is competent to testify *at trial*.

Thus, it is always appropriate to examine the child's trial testimony in making this determination.

must find that Brousseau proved by a preponderance of evidence that J.R. was "incapable of receiving just impressions of the facts" or "relating them truly." RCW 5.60.050(2).

¶23 Brousseau relies on earlier case law suggesting that the discretion afforded to the trial court in assessing testimonial competency derives from the trial judge's ability to observe the child witness firsthand. *See, e.g., State v. C.J.*, 148 Wn.2d 672, 682, 63 P.3d 765 (2003) ("The determination of competency rests primarily with the trial judge who sees the witness, notices his or her manner and demeanor, and considers his or her capacity and intelligence."). He thus contends that competency cannot be determined in the absence of a pretrial examination of the witness and, therefore, that the trial court's determination of competency must be reversed.

¶24 It is true that the deference standard rests upon the trial judge's opportunity to see and hear witnesses. However, this standard is not unique to competency determinations, and we have never held that the standard requires the court to base its decision on hearing or seeing a particular witness. Indeed, in reaching its decision, the trial court often hears evidence from a number of witnesses, such as the defense expert who examined the child in this case and who testified at the hearing.

¶25 Additionally, in support of his claim that the deference standard rests upon the court's ability to examine the child witness, Brousseau relies on a number of cases that were decided before our decision in *S.J.W.* The language of RCW 5.60.050 and our decision in *S.J.W.* compel us to reconsider the procedure for challenging a child witness's competency in light of the legislature's decision to treat children and adults in the same manner. Because there is no longer a presumption of incompetency, and the burden of establishing competency is on the party objecting to the child's competency as a witness, the issue becomes how a party must present the challenge. In considering this issue, we find it significant that the burden shift we announced in

*S.J.W.* has brought our competency jurisprudence into line with federal law. Federal case law is therefore a useful starting point for our analysis. *Cf. S.J.W.*, 170 Wn.2d at 100 (finding "[f]urther support" for a universal presumption of competency in "the federal rules and case law").[6]

¶26 Under the federal scheme, a party challenging a child's competency is not entitled to a competency examination as a matter of right but instead must make a threshold showing before subjecting the child to a competency examination. 18 U.S.C. § 3509(c)(3) (competency examination regarding child witness may be conducted only upon offer of proof of incompetency); 18 U.S.C. § 3509(c)(4) ("A competency examination regarding a child may be conducted only if the court determines, on the record, that compelling reasons exist. A child's age alone is not a compelling reason.").[7]

¶27 The federal requirement that a court find "compelling reasons" before requiring a witness to testify at a pretrial competency hearing is a logical extension of our holding in *S.J.W.* The party challenging competency bears the burden of establishing incompetency. Thus, it makes little sense to require the court to examine a witness—at the expense of the witness and the court—where the party challenging competency lacks a demonstrated ability to prevail in this challenge. *Cf. S.J.W.*, 170 Wn.2d at 101 (" 'The statutory scheme [found at 18 U.S.C. § 3509] places a heavy burden on a party seeking to have a child declared incompetent to testify. A court may only conduct a compe-

---

[6] As we noted in *S.J.W.*, in federal court, all witnesses—including children—are presumed competent to testify, and the burden is on the party challenging competency to prove otherwise. Fᴇᴅ. R. Eᴠɪᴅ. 601 ("Every person is competent to be a witness except as otherwise provided in these rules."); 18 U.S.C. § 3509(c)(2) ("A child is presumed to be competent."); Fᴇᴅ. R. Eᴠɪᴅ. 301 ("In all civil actions and proceedings . . . a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption.").

[7] This is the same standard that is followed when a criminal defendant's competency to stand trial is called into question. *See, e.g., State v. Lord,* 117 Wn.2d 829, 901, 822 P.2d 177 (1991) (competency hearing required only if court makes a threshold determination that there is reason to doubt competency).

tency examination of a child witness upon submission of a written motion by a party offering compelling proof of incompetency.' " (quoting *United States v. Allen J.*, 127 F.3d 1292, 1294 (10th Cir. 1997))).

¶28 The federal cases to which Brousseau directs our attention actually support the principle that a witness is not required to testify at a pretrial competency hearing absent a threshold showing of incompetency. For example, in *United States v. Crosby*, 149 U.S. App. D.C. 306, 462 F.2d 1201, 1203 (1972), the Court of Appeals recognized that each case must be evaluated on its facts. Of course, once a " 'red flag' of *material* impact upon competency of a witness" is raised, "an inquiry must be made into the facts and circumstances relevant thereto." *Id.*; *see also Sinclair v. Wainwright*, 814 F.2d 1516 (11th Cir. 1987) (same).

¶29 The facts of these cases are also instructive. In *Crosby*, the witness was a longtime drug addict who had used drugs on the day of trial and who had been hospitalized for drug addiction. The appellate court held that the trial judge's refusal to examine the medical records bearing on the witness's condition was an abuse of discretion and remanded for the court to consider the records to determine whether they "undercut" his competency finding. 462 F.2d at 1203. Similarly, in *Sinclair*, the witness had been declared incompetent to stand trial by the same judge who was trying Sinclair, yet the judge refused to conduct a competency hearing upon the objection of Sinclair's attorney. *Sinclair*, 814 F.2d at 1523. The appellate court remanded for a competency determination. "If the witness was competent, then appellant should suffer adverse judgment on his due process claim." *Id.* If the witness was incompetent, the court indicated that a violation of due process should be found, unless the admission of the witness's testimony was harmless beyond a reasonable doubt. *Id.* In each of these cases, as a threshold matter, the trial court was confronted with information that was a "red flag" of material impact on the competency of the witness. The

court was therefore required to make a competency determination.

¶30 In contrast, the record here indicates that Brousseau's "bare assertion" that J.R. was incompetent was the sole basis for the court's agreement to hold a competency hearing. *State v. China*, 312 S.C. 335, 340, 440 S.E.2d 382 (Ct. App. 1993) ("The bare assertion, as here, challenging the competency of the witness to testify is not sufficient to require an examination by the trial judge."). Adhering to case law that preceded *S.J.W.*, the trial court stated, "There's no question that the defense is challenging the competency of the state's witness, [J.R.]. Ah, once that challenge has been issued, then there has to be a determination of that issue, competency." VRP (Mar. 27, 2007) at 10. The trial court gave no indication that Brousseau had made a threshold showing of incompetency. *See China*, 312 S.C. at 340. Thus, the trial court's agreement to hold a competency hearing did not amount to a finding that Brousseau had made a showing of incompetency. Rather, the trial court simply assumed a hearing must be held if competency was challenged, relying on now inapposite case law.

¶31 We conclude from the record that Brousseau did not make a sufficient showing of J.R.'s incompetency to require her testimony at a pretrial competency hearing. *See Crosby*, 462 F.2d at 1203. Brousseau's recitation of the *Allen* factors, without more, did not constitute a sufficient offer of proof of incompetency. In any case, even if Dr. Mabee's testimony is considered on this question, it does not amount to a threshold showing. For example, J.R.'s ability to recall details of her bedroom belied Dr. Mabee's conclusions that J.R. lacked a memory sufficient to retain an independent recollection of the abuse. Nor did Dr. Mabee's opinion that J.R. had limited ability to express abstract concepts raise a red flag; there is nothing abstract about sexual abuse. In sum, because Brousseau did not make a sufficient threshold showing of incompetency to warrant a pretrial examination of J.R., the trial court did not err in refusing to allow Brousseau to examine J.R.

¶32 Brousseau argues, however, that applying the *Mathews* balancing test yields a different result. Suppl. Opening Br. at 8-9; *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We disagree.[8]

■ ¶33 "[D]ue process 'is flexible and calls for such procedural protections as the particular situation demands.' " *In re Pers. Restraint of Sinka*, 92 Wn.2d 555, 565, 599 P.2d 1275 (1979) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)). Under the *Mathews* framework, a court determines the procedural safeguards to which an individual is entitled by balancing " '(1) the significance of the private interest to be protected; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the fiscal and administrative burdens that the additional procedural safeguards would entail.' " *State v. Maule*, 112 Wn. App. 887, 893, 51 P.3d 811, 77 P.3d 362 (2002) (quoting *Stone v. Prosser Consol. Sch. Dist. No. 116*, 94 Wn. App. 73, 76, 971 P.2d 125 (1999)).

---

[8] In applying the balancing test announced in *Mathews*, we are cognizant that, on at least one occasion the United States Supreme Court has declined to apply *Mathews* in the criminal context. *Medina v. California*, 505 U.S. 437, 443, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992). Notably, however, the Court's rejection of the *Mathews* analysis rested on its unwillingness to intrude upon the prerogative of states to enact criminal procedural rules. *Id.* ("In our view, the *Mathews* balancing test does not provide the appropriate framework for assessing the validity of state procedural rules which, like the one at bar, are part of the criminal process. . . . As we said in *Spencer v. Texas*, 385 U.S. 554, 564[, 87 S. Ct. 648, 17 L. Ed. 2d 606] (1967), 'it has never been thought that [decisions under the Due Process Clause] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.' " (second alteration in original)).

In *State v. Heddrick*, 166 Wn.2d 898, 904 n.3, 215 P.3d 201 (2009), this court relied on *Medina* in declining to apply the *Mathews* balancing test to a due process claim. Like *Medina*, *Heddrick* addressed the procedures for evaluating a criminal defendant's competency to stand trial—an issue that is unique to the criminal context. *Id.* at 903.

Here, Brousseau challenges the procedure for assessing a witness' competency to testify—an issue that may arise in a civil or criminal proceeding. Though the usefulness of the *Mathews* test in resolving the due process question presented here may be debated, Brousseau relies heavily on the test in his briefing, and the State has not argued for a different test. Suppl. Opening Br. at 8-9 (citing *State v. Maule*, 112 Wn. App. 887, 51 P.3d 811, 77 P.3d 362 (2002)).

¶34 The interest to be protected is a criminal defendant's right to be free from a conviction based on incompetent evidence. The challenged procedure is a pretrial competency hearing in which the court heard the testimony of a defense psychologist who had examined a child witness but declined to permit pretrial examination of the child witness.

¶35 The "private interest" at stake, the defendant's liberty, is clearly significant. However, factor (2) of the *Mathews* inquiry does not favor Brousseau. The risk of an erroneous deprivation of liberty is minimal in the context of a pretrial competency hearing. First, the bar for competency is low; with few exceptions, all witnesses are presumed competent, including children. RCW 5.60.020, .050; CrR 6.12. Indeed, absent a challenge to competency, the trial court need not conduct a competency hearing at all. *State v. C.M.B.*, 130 Wn. App. 841, 843, 125 P.3d 211 (2005). In fact, as noted earlier, in federal court a competency examination regarding a child may be conducted only if the court determines, on the record, that compelling reasons exist. 18 U.S.C. § 3509(c)(4).

¶36 More importantly, the consequence of finding a witness competent without an examination of the witness at a pretrial proceeding is that the witness will testify at trial and be subject to cross-examination. The witness's testimony at trial can cure an erroneous pretrial competency determination by shedding further light on the witness's competency or lack thereof. Thus, because we are concerned with the risk of an erroneous conviction, we must consider Brousseau's procedural due process claim in light of the entire trial, rather than confining our inquiry to the pretrial proceedings.

¶37 Competency may be challenged at any time, including at trial. *See* 2 TORCIA, *supra*, § 360, at 443 ("The question of a child's competency as a witness may be determined either from a preliminary examination or from his testimony before the jury, or from both."). Moreover, a criminal

defendant may renew a pretrial competency challenge at trial. A child found competent at one point in time may become incompetent at trial, at which point a litigant may raise an objection based on the child's trial testimony, or the court may conduct a competency determination sua sponte, if it becomes clear during trial that a witness is incompetent. *See C.M.B.*, 130 Wn. App. at 846. Furthermore, "[i]f the court finds a witness competent to testify [in the absence of her testimony at a pretrial hearing], but the witness's incompetency becomes apparent during examination during trial, the testimony already given by the witness should be stricken and the jury should be instructed to disregard it." 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 601.2, at 294 (5th ed. 2007). Thus, a party challenging competency on the ground that the witness was not subject to examination at a pretrial hearing has ample opportunity during trial to correct a preliminary error.

¶38 The determination of competency based on evidence other than direct examination of the child witness does not pose an undue risk of an erroneous deprivation of liberty when the ultimate question is whether competent testimony is given at trial and the child witness's competency is subject to challenge throughout the trial. Here, Brousseau had the right and the opportunity to renew a challenge to J.R.'s competency, and the trial court could have conducted a competency hearing sua sponte after observing J.R. firsthand had it been concerned with J.R.'s competency. *See C.M.B.*, 130 Wn. App. at 846 (trial court may initiate competency examination sua sponte). Neither occurred.

¶39 Factor (3) of the *Mathews* test also weighs against Brousseau's position. As noted, child witnesses, like all other witnesses, are presumed to be competent. Requiring witnesses to testify in pretrial proceedings in every case in which competency is challenged places an unnecessary burden on those witnesses as well as on State resources. Indeed, courts have recognized the power and the duty of the judge "to protect witnesses from undue harassment or

embarrassment" and to move the action forward and keep it on track. *Crosby*, 462 F.2d at 1202.

¶40 According to one set of researchers addressing child testimony in abuse cases,

> [T]estifying multiple times was associated with continued distress. . . . Our findings indicate, however, that testifying once does not, on average, lead to increased behavioral disturbance, at least as reported by parents, whereas multiple testimony experiences do. . . . In the present study, testifying more than once was the variable most highly associated with lack of improvement.

2 JOHN E.B. MYERS, EVIDENCE IN CHILD ABUSE AND NEGLECT CASES § 6.2, at 6 n.17 (3d ed. 1997) (quoting GAIL S. GOODMAN, ELIZABETH PYLE TAUB, DAVID P.H. JONES, PATRICIA ENGLAND, LINDA K. PORT, LESLIE RUDY & LYDIA PRADO, TESTIFYING IN CRIMINAL COURT, 117 (1992)).

¶41 As noted, Brousseau's "claim of error focuses on the procedure, not the outcome of the hearing." Suppl. Opening Br. at 5. Ultimately, Brousseau does not contend, nor can he, that J.R. was incompetent, nor that she gave incompetent evidence that tainted his conviction. While procedures certainly affect the outcome of criminal trials, that is simply not the case with respect to a rule of procedure requiring a child witness to testify and be examined at a pretrial competency proceeding, because competency remains an issue throughout trial. We thus reject Brousseau's argument that in every case, due process requires a trial court to hear testimony *before trial* from a witness presumed to be competent.[9]

---

[9] The traditional analysis for due process claims in the criminal context yields the same result as the *Mathews* balancing test. *See Medina*, 505 U.S. at 445 (state rule of criminal procedure survives due process "unless 'it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental' " (internal quotation marks omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 202, 97 S. Ct. 2319, 53 L. Ed. 2d. 281 (1977))). While a conviction resting on the testimony of an incompetent witness may conflict with deeply rooted conceptions of justice, Brousseau does not contend that J.R. was incompetent and that his conviction was tainted as a result. Because Brousseau attacks

¶42 We next turn to the State's argument that even if the trial court were required to allow Brousseau to examine J.R., any error would be harmless in this case. Suppl. Br. of Resp't at 4. Assuming, as Brousseau argues, that a due process violation occurred, any such violation took place at the pretrial stage and thus did not infect the trial. Significantly, Brousseau has not argued that J.R. did not in fact provide competent evidence. To the contrary, J.R.'s testimony at trial corroborates the trial court's conclusion that J.R. was indeed competent to testify and, thus, it cured any procedural error in the pretrial competency determination.

¶43 Other courts have similarly found no reversible error where a child's testimony at trial showed that the child was competent, notwithstanding any failure to assess competency beforehand. *E.g., People v. Salazar*, 648 P.2d 157, 159 (Colo. App. 1981) (any error potentially committed by perfunctory examination of children during competency proceeding was cured during trial when they testified); *Russell v. State*, 540 N.E.2d 1222, 1225 (Ind. 1989) (trial court's error in failing to determine whether the child witness knew the difference between the truth and a lie during the competency proceeding was cured when at trial, during extensive and challenging cross-examination, the child demonstrated that she knew what a true statement was); *Smith v. State*, 100 Nev. 570, 573, 688 P.2d 326 (1984) (court reviewed voir dire examination of child and her testimony at trial and concluded that competency determination would not be reversed); *State v. Beane*, 146 N.C. App. 220, 231, 552 S.E.2d 193 (2001) (the defendant's opportu-

only the procedures at the competency hearing, and because he had an opportunity at trial to correct an erroneous competency determination, the trial court's failure to examine J.R. at the pretrial hearing did not implicate his right to a fair trial. *See Medina*, 505 U.S. at 445.

In concluding otherwise, the dissent errs in relying on historical procedures for determining the competency of child witnesses. We held in our recent decision in *S.J.W.* that child witnesses are presumed competent to testify and that the defendant bears the burden to prove incompetency, thus altering the historical practice of requiring every child witness to appear before the trial judge as a prerequisite for testifying at trial.

nity to cross-examine the child witness at trial cured any prejudice he may have suffered as a result of not being allowed to question the child witness during a competency voir dire); *State v. Lewis*, 4 Ohio App. 3d 275, 277, 448 N.E.2d 487 (1982) (even if the determination of competency at a pretrial hearing was somehow deficient, any error was cured by the child's subsequent testimony at trial).

¶44 Brousseau also claims that RCW 9A.44.120 requires a child to testify at the child hearsay hearing before the child's hearsay statements may be admitted at trial. RCW 9A.44.120 governs the admissibility of out-of-court statements made by putative child victims of sexual abuse. The statute provides that the hearsay statements of the child are admissible if, among other conditions, the child "[t]estifies at the proceedings" or "[i]s unavailable as a witness." RCW 9A.44.120(2)(a), (b).

¶45 Brousseau argues that the word "proceedings" refers to the pretrial hearing to determine whether the child declarant's out-of-court statements bear sufficient indicia of reliability for admission. In the absence of a showing of unavailability pursuant to subsection (2)(b) of this statute, he contends that the trial court erred in failing to hear testimony from J.R. at the child hearsay hearing.

¶46 Today is not our first occasion to interpret RCW 9A.44.120. In *State v. Rohrich*, 132 Wn.2d 472, 481, 939 P.2d 697 (1997), we concluded that " 'testifies,' as used in RCW 9A.44.120(2)(a), means that the child takes the stand and describes the acts of sexual contact alleged in the hearsay" statement. We construed the statute in light of the confrontation clause of the Sixth Amendment and the legislative intent to draft the statute to conform to the confrontation clause. *Id.* at 476. Specifically, our interpretation rested on the general requirement under the confrontation clause for "[l]ive testimony . . . before the watchful eyes of the jury." *Id.* at 477 n.9; *see also In re Pers. Restraint of Grasso*, 151 Wn.2d 1, 13, 84 P.3d 859 (2004) ("[t]he right protected by the 'testifies' requirement is fundamentally constitutional in nature").

¶47 Thus, as we explained in *Rohrich*, subsection (2)(a) is concerned with testimony at trial—the touchstone of the confrontation clause—not testimony at the child hearsay hearing. *See also People v. Juvenile Court*, 937 P.2d 758 (Colo. 1997) (holding that Colorado statute nearly identical to RCW 9A.44.120 did not require child to testify at the child hearsay hearing and was satisfied if child declarant testified at trial). Our construction of the statute applies here because once this court determines the meaning of a statute, that is what the statute has meant since it was enacted. *Bowman v. State*, 162 Wn.2d 325, 335, 172 P.3d 681 (2007).

¶48 In sum, we conclude that RCW 9A.44.120 does not mandate that a child witness testify at a child hearsay hearing as a prerequisite to admitting those statements at trial.

¶49 Finally, Brousseau claims that his attorney was ineffective in failing to move to strike an unresponsive answer by Deputy Nichols referencing defense counsel as appointed counsel. He says this remark implicated Brousseau's right to counsel and "exacerbated the bolstering of J.R.'s testimony." Appellant's Br. at 22.

¶50 To prevail on a claim of ineffective assistance of counsel, Brousseau must show that "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (applying the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

¶51 Brousseau appears to argue that admitting child hearsay constitutes "bolstering." Relying on ER 801(d)(1),

Brousseau appears to believe that child hearsay statements may not be admitted at trial absent a claim of recent fabrication. As the State points out, though, RCW 9A.44.120 concerns hearsay statements, while ER 801(d)(1) explicitly governs statements that are not hearsay. Brousseau fails to demonstrate a defect in defense counsel's performance based upon ER 801.

¶52 Brousseau also appears to argue that counsel was ineffective because he failed to object to the school counselor's comment as to J.R.'s credibility. Appellant's Br. at 21. Brousseau fails to identify the comment about which he complains or point to its place in the record. Under RAP 10.3(a)(6) a party must cite "references to relevant parts of the record" to obtain review. We decline to search for the applicable portion of the record in support of his argument. *Mills v. Park*, 67 Wn.2d 717, 721, 409 P.2d 646 (1966).[10]

## CONCLUSION

¶53 We hold that under a rebuttable presumption that all witnesses are competent to testify, due process does not require a child witness to testify at a pretrial competency hearing in every case. Here, the trial court did not abuse its discretion in concluding that the child witness was competent on the basis of the testimony of a child psychologist who examined the witness. Further, any error arising from the court's refusal to examine the child witness at the competency hearing was cured when the child gave competent testimony at trial. We also hold that RCW 9A.44-.120(2)(a) does not require a child declarant to testify at a child hearsay hearing. Therefore, the trial court properly admitted J.R.'s out-of-court statements. Finally, we hold

---

[10] Brousseau also fails to point to the place in the record where the allegedly objectionable statement by Deputy Nichols was made. As with the counselor's statement, we decline to search for the applicable portion of the record. In any event, Brousseau's main concern with Deputy Nichols's statement is its "bolstering" effect, an argument we reject.

that defense counsel was not ineffective. We affirm Brousseau's convictions.

C. Johnson, Fairhurst, J.M. Johnson, and Stephens, JJ., concur.

¶54 Owens, J. (dissenting) — The constitutional requirement of due process of law and the trial procedures that derive from it exist to safeguard against wrongful convictions. This case is about what process is constitutionally required to protect a defendant from facing trial based on incompetent witness testimony. Our deferential review of a trial court's competency determination for abuse of discretion is premised on our appreciation that it is the trial judge who can see, hear, and otherwise observe a witness's testimony, replete with mannerisms, tone, poise, and any unease or hesitations. Here, the trial court had no such opportunity because it refused to allow for the pretrial testimony of a witness whose competency was *credibly* challenged. The majority digresses from the question presented and perilously extends this court's precedent to arrive at its conclusion that the trial court's refusal was not error and, regardless, was harmless. I cannot agree with the majority's reasoning or conclusions on these points, so I must dissent.

I. The Trial Court Abused Its Discretion and Disregarded Due Process Requirements by Excluding a Witness's Testimony at that Witness's Competency Hearing

¶55 Courts have established that "[a]fter a defendant raises a colorable objection to the competency of a witness, the trial court must perform 'a reasonable exploration of all the facts and circumstances' concerning competency." *Walters v. McCormick*, 122 F.3d 1172, 1176 (9th Cir. 1997) (quoting *Sinclair v. Wainwright*, 814 F.2d 1516, 1523 (11th Cir. 1987)). A court's failure to perform an adequate competency hearing implicates a defendant's due process rights.

*See id.*; *Sinclair*, 814 F.2d at 1522-23 ("if the challenged testimony is crucial, critical or highly significant, failure to conduct an appropriate competency hearing implicates due process concerns of fundamental fairness" (citing *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976))). "[A] hearing into the competency of a defendant (or a witness) *must* be as careful and complete as reasonably feasible in order to insure a fair trial." *United States v. Crosby*, 149 U.S. App. D.C. 306, 462 F.2d 1201, 1203 (1972) (emphasis added) (footnote omitted).

¶56 Before William Brousseau's trial, upon his motion, the trial court held a competency hearing concerning J.R., the child victim witness. Brousseau's motion challenging J.R.'s competency was supported by expert opinion. Clerk's Papers at 61. The trial court's decision to hear the issue obligated it to hold a fair hearing that adequately explored the issue of competency. After expert testimony from Dr. Walter Scott Mabee, a psychologist, that J.R.'s competency was impaired, Brousseau, in line with usual competency hearing practice, called J.R. as the next witness. The trial court refused to hear directly from J.R. but nonetheless found her to be competent. Brousseau argues that "J.R. was not competent to testify," Appellant's Br. at 10, and that "[t]he trial court's determination that J.R. was competent to testify is erroneous," *id.* at 1. I would hold that the trial court's finding of competency was an abuse of discretion. Refusal to evaluate a witness whose competency is credibly challenged is simply not a reasonable or adequate exploration of competency; it is error that contradicts due process of law.

¶57 The majority oversteps the due process question presented by this case when it argues that Brousseau did not make a sufficient threshold showing of J.R.'s incompetence to necessitate a hearing on the matter. Brousseau's challenge has to do with the sufficiency of the inquiry the court conducts, not its decision to conduct one. Here, because the trial court decided to hold a competency hearing,

the relevant issue is only whether the hearing and the decisions made at the hearing were constitutionally firm.[11]

¶58  I accept the majority's choice to apply the *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), balancing test to the due process challenge in this case because the witness competency statute, RCW 5.60.050, is a general evidentiary law that is applicable in both civil and criminal cases.[12] However, I briefly note that even under a criminal due process analysis, considering historic or traditional practices and conceptions of fundamental fairness, I would reach the same conclusion: due process requires that a trial court conduct a full competency hearing that includes, if requested, testimony by the witness whose competency is challenged when a defendant raises a *credible* competency challenge. Historic cases indicate such practice.

¶59  In 1895, the United States Supreme Court upheld a child witness competency determination on the basis that the trial court judge evaluated the witness before trial. *Wheeler v. United States*, 159 U.S. 523, 525, 16 S. Ct. 93, 40 L. Ed. 244 (1895) ("[T]he trial judge . . . sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence as well as his understanding of the obligations of an oath."). The *Wheeler* Court looked to British common law, particularly quoting *The King v. Brasier*, 1 Thomas Leach, Cases in Crown Law 199 (4th ed. 1815), which stated that the admissibility of children's testimony " 'depends upon the sense and reason they entertain of the danger and impiety of falsehood,

---

[11] Brousseau's trial predated our decision in *State v. S.J.W.*, 170 Wn.2d 92, 239 P.3d 568 (2010) (holding that all witnesses, even children, are presumed competent and that the party challenging competency bears the burden of proof). The question of what threshold showing is required to compel a competency hearing was not considered by the *Brousseau* trial court and is not properly before us.

[12] *Mathews* is typically not applied to scrutinize due process challenges in criminal cases. *State v. Heddrick*, 166 Wn.2d 898, 904 n.3, 215 P.3d 201 (2009); *Medina v. California*, 505 U.S. 437, 443, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992).

*which is to be collected from their answers to questions propounded to them by the court.'* " *Wheeler*, 159 U.S. at 525 (emphasis added) (quoting LEACH, *supra,* at 200). At that time, the states also followed a similar process, relying on trial courts to examine child witnesses to determine their competency to testify at trial. *See, e.g., State v. Juneau*, 88 Wis. 180, 182-83, 59 N.W. 580 (1894); *McGuff v. State*, 88 Ala. 147, 151, 7 So. 35 (1889); *Commonwealth v. Mullins*, 84 Mass. (2 Allen) 295, 296 (1861); *State v. Jackson*, 9 Or. 457, 459 (1881) ("It is for the court, *by means of a preliminary examination*, to decide the question of their competency when they are offered as witnesses." (emphasis added)). Such practice is broadly accepted at present. *See, e.g.*, 18 U.S.C. § 3509(c)(7) ("Examination of a child related to competency shall normally be conducted by the court."); *State v. Ryan*, 103 Wn.2d 165, 172, 691 P.2d 197 (1984) ("Guidelines for the trial court in reaching its determination [of competency] presume that the court has examined the child, observed his manner, intelligence, and memory."). And, courts have described failure to provide an appropriate witness competency hearing as a matter of fundamental fairness. *Sinclair*, 814 F.2d at 1522-23.

¶60 Under *Mathews*, we balance three factors to determine whether the competency hearing violated Brousseau's due process rights: (1) the private interest at stake, (2) the risk that an individual will be wrongly deprived of that interest, and (3) the government's interest. 424 U.S. at 335. While the majority accurately finds that Brousseau has a significant interest in his liberty, it skews the remainder of the analysis and confuses the question of whether there was error with whether it was harmless.

¶61 The State's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *id.*, is minimal. *See State v. Maule*, 112 Wn. App. 887, 893, 51 P.3d 811, 77 P.3d 362 (2002) ("the State's interest in testimony from a witness who is incompetent is nil"). Once

a trial court has decided to conduct a competency hearing there is little additional burden in allowing for testimony by the witness whose competency is challenged. In fact, it is the usual procedure at such hearings. *See, e.g., Ryan*, 103 Wn.2d at 172; 18 U.S.C. § 3509(c)(7).

¶62 The majority discusses the burden on the witness and the State's interest in protecting witnesses. However, at the point of a competency challenge, a witness has already agreed to participate in a trial. In the context of an investigation and trial, a witness is subject to multiple interviews, and, contrary to the majority's suggestion, elimination of a competency hearing does not bring the number of interviews to only one. While not nothing, the burden on the witness to testify is less than a defendant's liberty interest and is the necessary price we pay to assure a fair trial based on competent testimonial evidence. Importantly, a trial court retains its authority to protect witnesses from harassment or embarrassment by refusing to allow harassing or unnecessarily embarrassing questions. This court has specifically allowed trial courts to use their discretion to accommodate the needs of a child witness but has done so premised on the fact that the child witness appeared before the judge. *See, e.g., State v. Leavitt*, 111 Wn.2d 66, 70, 758 P.2d 982 (1988) (finding no reversible error where the trial court judge allowed the child witness to whisper answers that were then repeated by a social worker during the child's competency hearing); *Maule*, 112 Wn. App. at 889 (holding that due process was not violated when the trial court refused to allow the defense to cross-examine the witness at the competency hearing after the State had asked questions before the trial court). Moreover, there is no evidence or suggestion in this case that J.R. would have been traumatized by giving testimony at the competency hearing.

¶63 Looking to the final due process consideration, the risk of error—that incompetent testimony will be admitted at trial and used as a basis for conviction—is unduly high

when a trial court refuses to conduct a full pretrial exploration of a witness's competency when it is subject to a credible challenge. This court has repeatedly emphasized the significance of the trial court's direct observation of a child in a competency hearing, noting that "[t]he determination of competency rests primarily with the trial judge who sees the witness, notices his or her manner and demeanor, and considers his or her capacity and intelligence." *State v. C.J.*, 148 Wn.2d 672, 682, 63 P.3d 765 (2003) (citing *State v. Swan*, 114 Wn.2d 613, 645, 790 P.2d 610 (1990)); *see State v. Allen*, 70 Wn.2d 690, 692, 424 P.2d 1021 (1967). Also, in relevant part, RCW 5.60.050(2) provides that "[t]hose who *appear* incapable of receiving just impressions of the facts, respecting which they are examined, or of relating them truly" shall not be competent to testify. (Emphasis added.) The statute employs language that implies appearance before a judge since it is the judge who makes competency determinations. I would not abandon this court's consistent good sense about the role of a trial judge where witness competency is credibly challenged.

¶64 While observation of a witness at trial is an important backup safeguard against the admission of incompetent testimony, it is just that—a backup. Competency determinations should not be left until trial when there is a credible challenge made in advance. The purpose of a competency hearing is, after all, to determine whether certain testimony is admissible. Analogously, there is a reason that evidentiary suppression hearings are typically held, upon credible motion, in advance of trial: so inadmissible evidence is never introduced. There is great risk at trial that incompetent testimony will not be revealed as such. If the prosecuting attorney explored competency issues during direct examination of a witness, such questions might violate the rule prohibiting the bolstering of a witness's credibility before any attempted impeachment. Cross-examination is limited by the scope of direct examination and to issues of credibility, creating a real chance

that questions relating to competency may never survive objection. Where there is concern, as there was in this case, about whether the witness has independent recall of the alleged incident, an incompetent witness might fluidly testify, all the while appearing competent despite serious deficiencies.[13] This is especially true with child victim witnesses, for whom trial courts allow the broad use of leading questions on direct examination and common answers are simply "yes" or "no." Despite the *possibility* that questions relating to competency might be asked and that competency can be raised anew at trial, competency is significantly a question of law, not an issue of credibility for the jury. Accordingly, the trial court should be expected to fully scrutinize witness competency before trial, upon a credible challenge.

¶65 Brousseau's interest in his liberty is high, while the State's interest, even factoring in witness protection, is minimal. Absent an adequate pretrial hearing, the risk that incompetent testimony will be admitted at trial is too high, especially here, where a credible competency challenge included expert opinion that J.R.'s capacity to independently recall the incident about which she would be giving testimony was limited. As a result, the trial court denied Brousseau due process of law when it refused to hear testimony from J.R. at her competency hearing.

¶66 In reaching the opposite conclusion, the majority conflates this case with *State v. S.J.W.*, 170 Wn.2d 92, 239 P.3d 568 (2010). *S.J.W.* did not address what threshold

---

[13] In *Swan*, for example, we upheld a trial court's determination that a child witness was incompetent based on her answers to questions unique to a competency hearing:

R.T. said that her birthday was in "higher June". She also said she had been in the courtroom 40 times (she had never been there before) and that it was Saturday, although it was not. . . . The court then asked R.T. if it would be the truth or a lie if she said she was wearing a pink dress. Though her dress was pink, R.T. said it would be a lie because her dress was long. R.T. then said her dress was "blue, sort of, but it's pink."

114 Wn.2d at 646. It is doubtful that questions eliciting these types of answers could be adequately explored in direct or cross-examination.

showing a defendant must make in order to justify a competency hearing or whether, during such a hearing, the trial court must, at the request of the defense, hear from the witness whose competency is challenged.[14] Consideration of these issues now is misguided because it strays from the issues raised and argued by the parties in both cases.

¶67 The majority argues that our entire framework for adjudicating witness competency has changed in light of *S.J.W.* Certainly, we recognized the statutory presumption of competence and that the party challenging competency bears the burden to prove otherwise. We did not, however, nor should we, disturb the expectation that a witness be able to perceive, remember, and truly relate the relevant details about which he or she is called to testify. *See Ryan*, 103 Wn.2d at 171 (holding a witness must be " 'possessed of sufficient mind and memory to observe, recollect, and narrate the things he has seen or heard' " (quoting *State v. Moorison*, 43 Wn.2d 23, 28-29, 259 P.2d 1105 (1953))). Nor did we disturb the rule that the trial court must fully scrutinize competency when a colorable challenge is raised. *S.J.W.*, 170 Wn.2d at 100 ("A child's competency is now determined by the trial judge within the framework of RCW 5.60.050, while the *Allen* factors serve to inform the judge's determination."); *see* 18 U.S.C. § 3509(c)(4) (providing for the direct examination of a child at a witness competency hearing upon a showing of compelling reasons). We cannot both leave the burden of proving incompetency with defendants and deprive them of a procedurally sound hearing, the means of meeting their burden.

¶68 While the question of what threshold showing is required to get a competency hearing is not properly before

---

[14] In *S.J.W.*, the trial court held a competency hearing. 170 Wn.2d at 95. While the witness whose competency was challenged in *S.J.W.* did not testify, the facts differ from this case in that the defense in *S.J.W.* did not call that witness at the competency hearing, *id.*, whereas Brousseau did. Nevertheless, this court did not consider whether failure to hear from that witness violated S.J.W.'s due process rights because the only question on review, raised by the State, was which party bears the burden at competency hearings. *Id.* at 94.

this court, I am nonetheless moved to comment on the matter because the majority's venture into this issue is not only extraneous but unsound. Brousseau presented the findings of a licensed psychologist, Dr. Walter Scott Mabee of Spokane, who has extensive experience in clinical and pediatric psychology. Verbatim Report of Proceedings (VRP) (Mar. 27, 2007) at 24-26. Dr. Mabee concluded that "[J.R.'s] capacity for offering accurate testimony I believe is impaired." *Id.* at 48. In relevant part, Dr. Mabee found that J.R.'s "memory capacity is less than what you would expect for a seven-year-old," *id.* at 71, and that her capacity to *independently* recall the incident about which she would be giving testimony was limited, *id.* at 62.[15] These concerns directly implicate the statutory designation that a witness who "appear[s] incapable of receiving just impressions of the facts . . . or of relating them truly" is incompetent to testify. RCW 5.60.050(2). This simply is not a case involving a "bare assertion" of incompetence. *Cf. State v. China*, 312 S.C. 335, 339-40, 440 S.E.2d 382 (Ct. App. 1993) ("Lack of capacity may be evidenced by . . . the presentation to the court of the witness' psychological profile through expert testimony."). If testimony by an examining psychologist that indicates serious deficiencies in a seven-year-old child's competency is not a threshold showing of a witness's incompetence, what is?

¶69 I am not convinced that the majority's suggestion that a hearing was unnecessary in this case would withstand scrutiny by the federal courts. In *Crosby*, for example, the District of Columbia Circuit held that due process was violated, even where the trial court examined the witness whose competency was challenged, on the basis of his history of drug addiction, because the court did not *also* evaluate the witness's medical records. 462 F.2d at 1203. The *Crosby* court specifically observed that the defendant

---

[15] Dr. Mabee elaborated that J.R.'s description of the event was a "pneumonic device" or an "automatic phrase," indicating to him that how J.R.'s memory "got stored may not be based solely upon direct experience." VRP (Mar. 27, 2007) at 43.

"properly received, from the learned District Judge a voir dire examination, out of the presence of the jury, of the government's chief witness . . . for the purpose of ascertaining whether or not he was incompetent to testify." *Id.* at 1202; *see Sinclair*, 814 F.2d at 1523 ("Only by a reasonable exploration of all the facts and circumstances could the trial judge exercise sound discretion concerning the competency of the witness."); *Walters*, 122 F.3d at 1176 (finding that there was no due process violation because "the court conducted a lengthy hearing[,] . . . questioned [the witness], and *also* invoked the assistance of a child psychiatrist" (emphasis added)). Again, I would find that it was error for the trial court here to refuse to examine a child witness whose competency was credibly challenged on the basis of expert testimony.

## II. The Trial Court's Error Was Not Harmless

¶70 The purpose of procedural due process in the context of a criminal trial is to assure " 'the right to a fair opportunity to defend against the State's accusations.' " *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)). Brousseau claims that J.R. was incompetent to testify. While it is true that Brousseau, or any party challenging a witness's competency, bears the burden to prove incompetence, at its core, Brousseau's claim is that the procedure in the pretrial competency hearing was so lacking that we cannot rely on its results or conclude that it substantiated a fair trial. Such error is constitutional in nature. "[C]onstitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless. A constitutional error is harmless if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error." *State v. Watt*, 160 Wn.2d 626, 635, 160 P.3d 640 (2007).

¶71 Here, there was constitutional error, and there is no certainty of outcome absent the error. If J.R. was *incompe-*

*tent* to testify, the only evidence at trial would have been hearsay statements from four other witnesses that J.R. told them that Brousseau had abused her. There would be no physical evidence, no victim testimony, and no eyewitnesses to the incident. Under those circumstances, a jury clearly could have reasonably found Brousseau not guilty. To find harmless error, we therefore must be convinced beyond a reasonable doubt that J.R. was competent to testify. I am not so convinced. Moreover, I cannot find any argument in the majority that addresses or establishes that this high standard is met.

¶72 " 'There is probably no area of law where it is more necessary to place great reliance on the trial court's judgment than in assessing the competency of a child witness.' " *State v. Woods*, 154 Wn.2d 613, 617, 114 P.3d 1174 (2005) (quoting *State v. Borland*, 57 Wn. App. 7, 11, 786 P.2d 810 (1990), *overruled on other ground by State v. Rohrich*, 132 Wn.2d 472, 481 n.16, 939 P.2d 697 (1997)). The witness's manner, capacity, and intelligence " 'are matters that are not reflected in the written record for appellate review.' " *Swan*, 114 Wn.2d at 645 (quoting *Allen*, 70 Wn.2d at 692); *cf. Borland*, 57 Wn. App. at 11 ("The trial judge is in a position to assess the body language, the hesitation or lack thereof, the manner of speaking, and all the intangibles that are significant in evaluation [of competency] but are not reflected in a written record."). It is therefore very difficult to be convinced of competency beyond a reasonable doubt merely by looking at a written record on appeal.

¶73 The majority points to *State v. Guerin*, 63 Wn. App. 117, 816 P.2d 1249 (1991), and *Woods*, 154 Wn.2d at 617, to argue that a reviewing court can look at the entire record, including J.R.'s testimony at trial, to review a competency determination. Both cases, however, importantly involved a pretrial competency hearing, during which time the trial court heard testimony from the child whose competency was challenged. *Guerin* involved a pretrial and trial challenge to the witness's competency. 63 Wn. App. at 121-22.

The Court of Appeals reviewed the trial record only in the context of the defense's renewed challenge to the child's competency *at trial*. *Id.* (finding that "the trial court conducted the appropriate pretrial hearings" and limiting its review to whether the child had inadequate independent recollection *"at the time of trial"*). In *Woods*, we did state that we may look at the entire record in reviewing the competency determination. 154 Wn.2d at 617. In our analysis, however, we focused entirely on the child witness's testimony at the pretrial hearing in deciding whether the trial court abused its discretion. *Id.* at 618-22. We did not look to the trial testimony to determine whether the child witness was competent. *Id.*

¶74 Even looking to J.R.'s trial testimony, it is virtually impossible to now evaluate her competency from the transcript. We could find cause for concern in J.R.'s testimony, *see* VRP (Sept. 11, 2007) at 103-44, including that she alternately recalls and denies speaking to certain people about the incident. Or, we could interpret that as a credit to her honest expression of only facts that she independently recalls at the moment of testimony. Either way, our assessment would be inadequate. Important questions related to her competency were not asked at trial. And, just as with the written record of competency hearings, we cannot tell from a trial transcript how intelligent she was, whether she paused between questions, whether she looked to someone else before she answered, whether she was giggling as she answered questions, or whether she appeared to be making up the answers. Moreover, we cannot read anything into the fact that Brousseau did not reassert his objection to J.R.'s competency during trial, as his objection would be redundant of the trial court's previous decision unless a new competency concern arose. Here the concern remained the same—that J.R. could not independently recall the details of the incident about which she offered testimony. While there may be certain circumstances like in *Guerin* where we can look at trial testimony to supplement or confirm

specific facts from pretrial hearing testimony, it is impossible to evaluate whether the error here was harmless when J.R. did not testify at the pretrial hearing at all.

¶75 The record is inadequate to satisfy the necessary standard that we be convinced beyond a reasonable doubt that either the jury would have reached the same result, absent error, or that J.R. was competent. We must therefore find that the error was not harmless and reverse the convictions and remand for a new trial.

## CONCLUSION

¶76 The trial court erred when it refused to hear from J.R. at a hearing regarding her competency. Because trial judges are uniquely positioned to perceive a witness's mannerisms, hesitations, apparent thoughtfulness, and many more details that cannot be transcribed and that are crucial to determining competency, a judge cannot completely forgo observation or examination of a witness whose competency is subject to a credible challenge. Beyond that, looking only at a written transcript, I cannot agree that J.R. was competent to testify *beyond a reasonable doubt*. With no eyewitnesses and no physical evidence to corroborate J.R.'s testimony, I cannot say—nor do I believe the majority can credibly say—that the jury positively would have found Brousseau guilty in the absence of the trial court's error. The trial court erred; its error was not harmless. I therefore dissent.

ALEXANDER and CHAMBERS, JJ., and SANDERS, J. PRO TEM., concur with OWENS, J.

Reconsideration denied October 18, 2011.